## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TEAM SCHIERL COMPANIES and HEARTLAND FARMS, INC., on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>ASPIRUS, INC., and ASPIRUS NETWORK, INC.,<br><br>*Defendants.* | Civil Action No. 3:22-cv-00580-jdp<br><br>Hon. James D. Peterson, U.S.D.J.<br><br>Hon. Stephen L. Crocker, U.S.M.J. |

## STIPULATED ESI AGREEMENT AND PROTOCOL

To facilitate consistency in the format of documents[1] and electronically stored information ("ESI") to be produced by the Parties in this case, and to expedite the flow of discovery, Plaintiffs Team Schierl Companies and Heartland Farms, Inc. (collectively, "Plaintiffs") and Defendants Aspirus, Inc. and Aspirus Network, Inc. (collectively, "Defendants," collectively with Plaintiffs, the "Parties"), by and through their respective counsel, hereby stipulate and agree to the terms of this Stipulated Order Regarding Protocol for the Production of Documents and Electronically Stored Information (the "ESI Protocol" or "Protocol").

The Parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. Nothing herein is intended to alter the Parties' rights and obligations under the Federal Rules of Civil Procedure and applicable law or this Court's

---

[1] "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure. For avoidance of doubt, the term "document" shall include hard copy documents and ESI.

Standing Order Relating to the Discovery of Electronically Stored Information In a Complex Civil Lawsuit (the "ESI Standing Order"). The Parties specifically reserve their rights and objections to any discovery that may be served upon them in this matter.

### A.    PURPOSE

1.    This ESI Protocol will govern discovery of ESI in the above-captioned case as a supplement to the Federal Rules of Civil Procedure, this Court's ESI Standing Order, and any other applicable orders and rules.

### B.    COOPERATION

1.    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's ESI Standing Order.

### C.    LIAISON

1.    Consistent with Section 2.02 of the Court's ESI Standing Order, the Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI ("e-Discovery Liaisons"). Each e-Discovery Liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies and production of ESI in this matter. The Parties will rely on the e-Discovery Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

### D.    PRESERVATION OF ESI

1.    The Parties have met and conferred to discuss the application of the discovery process set forth the Federal Rules of Civil Procedure and this Court's ESI Standing Order to this case, including their preservation obligations and needs. The Parties agree that potentially relevant ESI has been preserved, and will continue to be preserved, in a reasonable and

2

proportionate manner.

2.      Subject to the exceptions enumerated below, the Parties have taken reasonable and good faith steps to preserve potentially relevant documents. The Parties will continue to preserve such documents, subject to any applicable further Court order or to any further agreements the Parties reach.

3.      The Parties will meet and confer about sources of potentially relevant ESI that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). To the extent that any Party identifies potentially relevant documents that are not reasonably accessible, the Parties shall meet and confer. The following sources of data may not be reasonably accessible and do not need to be preserved, searched, reviewed, or produced:

> a.      Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives;
>
> b.      Automatically saved versions of documents and temporary data stored in random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system;
>
> c.      Telephone voice messages, unless they are transcribed or otherwise retained in the ordinary course of business;
>
> d.      Text, mobile messaging, and instant messages not retained in the ordinary course of business (however, any business-oriented text, mobile messaging, and instant messaging records, including, but not limited to, those made via Microsoft Teams or similar instant messaging software, retained by the Parties in the ordinary course of business should be preserved);

e.     Data stored on photocopiers, scanners, and fax machines;

f.     Data only accessible by advanced forensic analysis, including deleted, slack, fragmented, or unallocated data;

g.     Temporary Internet files, history, cache, and cookies;

h.     Data in metadata fields that are frequently updated automatically, such as last opened dates;

i.     Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Android devices), provided that a copy of such mail is routinely saved elsewhere;

j.     Other electronic data stored on mobile devices in a party's possession, custody, or control, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

k.     Server, system, or network logs;

l.     Social media;

m.     Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

n.     Data remaining from systems no longer in use that is unintelligible on the systems in use; and

o.     Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

4.     To help contain costs, the Parties shall not be obligated under this ESI Protocol

to produce or preserve ESI that was deleted or lost as a result of routine, good-faith operations prior to the date upon which the duty to preserve ESI and documents in connection with this litigation arose. If a Producing Party learns that responsive ESI that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall promptly advise the Receiving Party. Nothing in this agreement alters the Producing Party's obligations to demonstrate the unavailability of such information pursuant to Federal Rules of Civil Procedure 26(b)(2)(B).

5.      The Parties further acknowledge that discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. Before initiating discovery about preservation, collection, or review, any Party seeking such discovery shall initiate a meet and confer with the other Party concerning the specific need for such discovery, including its relevance to claims and defenses, the suitability of alternative means for obtaining the information, and the proportionality of the request. Discovery into such matters may be compelled only on a showing of good cause considering at least the aforementioned factors from the Federal Rules of Civil Procedure and applicable case law.

E.      **PRIVILEGE**

1.      Pursuant to Federal Rule of Civil Procedure 26(b)(5), a party withholding or redacting any responsive document shall provide the Receiving Party with a privilege log within 45 days after the ESI production from which the responsive document(s) was withheld or redacted, but no later than 45 days before the close of fact discovery. For any productions made in the last 45 days of fact discovery, a privilege log for any withheld or redacted

documents must be produced concurrently with the production where practicable to do so and in no event later than five business days after such production.

2.      Privilege logs shall be provided in Excel format and shall contain at least the following information for each responsive document withheld or redacted: (i) a sequential number associated with each privilege log record; (ii) the date of the document; (iii) the Bates numbers; (iv) the identity of persons who sent (and, if different, the identity of all persons who authored or signed) the document and the addressees, recipients, copyees, and blind copyees (with senders, signers, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories), and identification of which of them are attorneys; (v) a description of the subject matter of the information contained in the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity, consistent with the Federal Rules of Civil Procedure; (vi) the type or nature of the privilege asserted (i.e., attorney-client privilege or work product doctrine, and if such other privilege or immunity is asserted it shall be separately identified); and (vii) an indication of whether the document has been redacted and produced or withheld in its entirety.  The Parties may confer regarding whether a summary log that contains the information specified in this paragraph will be acceptable. The Parties shall enter into a separate agreement with respect to the logging of hard-copy privileged documents, to the extent such documents exist.

3.      The Parties agree that certain privileged communications or documents need not be included in a privilege log: (i) communications to or from Outside Counsel (as defined in the Protective Order entered in this action); (ii) internal communications within any Outside Counsel's law firm; (iii) any communications regarding litigation holds, preservation,

collection, or review in this or any litigation; and (iv) any communication or document that postdate October 11, 2022, which is the day before the initial Complaint was filed.

4.      If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information.

5.      If a Producing Party identifies portions of a document as privileged or protected from discovery and redacts such portions of the document pursuant to this ESI Protocol, the Producing Party must log the fact of each document's redaction.  A party asserting privilege over a chain of emails must assert privilege separately on the privilege log as to each portion of the email chain for every email within the chain that does not contain an attorney for the Producing Party, as the author or recipient.  Otherwise, an email thread for which a party claims a privilege may be logged in a single entry, provided that the log entry provides sufficient information to support the application of privilege to the entire email thread or the portions of the email thread that are redacted.  The Producing Party shall also produce a key showing the job title(s) for all attorneys identified on that Producing Party's privilege log.  Should a Receiving Party be unable to ascertain whether a document contained on the log is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the Parties shall meet and confer to attempt to cooperatively resolve the dispute.  A Party need not log Communications between such Party and its outside counsel of record in this case, including employees of such outside counsel-of-record firms ("Litigation Counsel").

F.      **FORMAT OF PRODUCTION**

1.      The Parties agree to produce responsive, non-privileged documents as set forth

in Exhibit A. If particular documents require a different format, the Parties will meet and confer to arrange for the mutually acceptable production of such documents.

2.    <u>Hardcopy</u>.  Any hardcopy documents should be scanned as in PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields:  "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

3.    <u>De-duplication, threading, and de-NISTing</u>. A Producing Party shall de-duplicate documents horizontally (globally) across the population of records. In de-duplicating horizontally: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all Custodians who were in possession of a de-duplicated document, the directory structure where the Custodian stored the de-duplicated document, and all other sources of the document must be identified in the "Custodian – All / All File Paths" metadata field specified in Exhibit A.

4.     <u>Email Threading</u>. Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. The Parties agree that each Producing Party may reduce duplication of documents through the threading of email strings, which threading operations should not prohibit the production of attachments appearing in any earlier version of an email thread. The Parties further agree that they may de-NIST ESI using the current list of system files maintained by the National Software Reference Library. The Parties will maintain all de-duplicated files, de-NISTed ESI, and earlier "threaded" versions of email strings.

5.     <u>Structured data</u>. Structured data should be produced in Microsoft Excel or such other native, manipulable format that is agreed to by the Parties. Where a discovery request requires production of structured data (e.g., data from an SAP database), in lieu of producing in accordance with Exhibit A, the Producing Party may identify such potentially relevant structured data sources within a reasonable period after receiving the discovery request where production in accordance with Exhibit A is not feasible or practicable, and the Requesting Party and Producing Party, as appropriate, shall meet and confer on the content and format of data extraction from such structured data source(s).

6.     <u>Processing issues</u>. If a member of a document family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the Parties shall meet and confer about

the issue and any additional information regarding "Technical issue" documents that the Receiving Party may want. Both Parties will conduct reasonable efforts to resolve any technical issues associated with documents prior to production.

7.      ESI Date and Time Processing. Each Party's ESI should be processed using Greenwich Mean Time (GMT) / Universal Coordinated Time (UTC).

8.      Attachments. Email attachments and embedded files must be mapped to their parent document by the Bates number by including a "Beg Attach" field designating the beginning of each such attachment and "End Attach" field designating the end of each such attachment. If attachments and embedded files cannot be separated from their parent documents, then "Beg Attach" and "End Attach" fields listing the unique beginning and ending Bates number for each attachment or embedded document must be included. Non-substantive automatically-generated embedded files, such as logos, embedded, non-substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced. To the extent they are maintained together, all documents in a document family shall be consecutively Bates number stamped with the child documents produced immediately after the parent document.

9.      Embedded Documents. Embedded documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as an independent document, and related back to the respective top-level parent document (e.g., standalone file, email message, etc.) via the "Beg Attach" and "End Attach" fields referenced in Exhibit A. Related embedded documents will be produced within a continuous Bates number range.

10.     Compressed Files.  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

11.  Redactions. Documents shall only be redacted to the extent necessary to protect (i) privileged information or as required by reasonably applicable law or statute, (ii) protected health information (as defined in 45 C.F.R. §§ 160.103 and 164.501 and the Protective Order entered in this action); or (iii) personally identifiable information as set forth in Fed. R. Civ. P. 5.2. To the extent that a responsive document contains any of the foregoing as well as information not so protected, the Producing Party must produce that document in redacted form. In the event a document is redacted, the full text should be replaced with OCR text that excludes the redacted material. When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable and a production Load File field should be populated to indicate the document contains a redaction. If a document to be produced in native format requires redaction it should be produced in redacted native format. The native file should show the word "redacted" where applicable and a production Load File field should be populated to indicate the native file contains a redaction. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced subject to Exhibit A will be the metadata extracted from the original native file, other than metadata containing redacted information. All documents withheld, in whole or in part (i.e., redacted), on the basis of any claim or privilege or applicable law or statute must be logged as set forth above.

12.  No Designation of Discovery Requests. Production of hard copy documents and ESI in the reasonably usable form set out in this Protocol need not include any reference to the requests to which a document or ESI may be responsive.

**G.  SEARCH METHODOLOGY**

1.  The Parties hereby agree that negotiations regarding search terms and other filtering methods are intended to be a cooperative and iterative process. Prior to conducting a

search for responsive documents, regardless of the search methodologies to be employed, the Parties shall meet and confer regarding the search methodologies the Producing Party proposes to employ to identify potentially responsive documents, and make such disclosures regarding their proposed search methodology that will permit the Requesting Party to evaluate the proposed methodology and enable meaningful meet and confers.

    2.   <u>Custodial and non-custodial sources</u>. The Parties shall disclose the proposed custodians and non-custodial sources that will be collected for search (the "corpus"). The Parties shall disclose potential custodians including his/her name, title(s), direct supervisor(s), direct report(s), and a general description of the subjects of discoverable information each custodian is anticipated to possess. In addition, to the extent reasonably available and in compliance with the Federal Rules of Civil Procedure and any Court Order governing discovery, the Parties shall provide organizational charts or other such documents that show the structure of the organization, and the relationships and relative ranks of its parts and positions. The Parties thereafter shall promptly meet and confer to attempt to reach agreement on custodians and non-custodial sources.

    3.   <u>Search Methodology</u>. The Parties agree to search for and produce unique, responsive records from sources of accessible hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party. The Parties shall meet and confer regarding the search methodology to be applied, including, without limitation, the following.

        a.   <u>Search Terms</u>.  If search terms will be used to cull potentially responsive materials, the Parties shall disclose an initial list of search terms and/or any other filtering methods that they propose to use on the corpus of

collected documents (custodial and non-custodial), and, to the extent applicable, the proposed sequence.  A Party proposing search terms shall produce, along with the search terms, a hit report.

    b.    <u>Predictive Coding/Technology Assisted Review</u>.  "Predictive Coding/Technology Assisted Review" refers to the processes for prioritizing or coding a collection of documents using computerized systems, such as machine-learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject-matter of a litigation regarding the responsiveness of a subset of documents and extrapolating those judgments to the remaining document collection. Technology Assisted Review is an acceptable way to search for relevant electronically-stored information in this case.  If a Party elects to use Technology Assisted Review to identify or eliminate documents for the purposes of responding to requests for production, the Parties shall meet and confer regarding the processes to be applied prior to the use of such technology, and to the use of other techniques in addition to the use of technology-assisted review. If the Parties cannot resolve any disagreements regarding technology assisted review methodologies, they shall promptly bring the dispute to the Court for resolution.

**H.    INADVERTENT OR MISTAKEN PRODUCTION**

1.    The Parties agree to follow the procedures outlined in the Protective Order entered by the Court with respect to the inadvertent or mistaken disclosure or production of information which a party contends may constitute privileged information or attorney-client

work product. In addition to such procedures, the Parties agree as follows:

2.     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product protected document, whether inadvertent, mistaken, or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

3.     If a Producing Party gives notice to Receiving Parties that it inadvertently or mistakenly produced documents, testimony, information, and/or things that are protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other reasonably applicable privilege or immunity from disclosure (i.e., clawback), or the Receiving Party discovers such inadvertent production, the inadvertent production shall not be deemed a waiver of the applicable privilege or protection. The Receiving Party shall promptly return all copies of such documents, testimony, information and/or things to the inadvertently or mistakenly Producing Party and shall not use such items for any purpose.  Such return must occur within 14 days of receipt of notice or discovery of the inadvertent production.

## I.     PRODUCTION—RECEIPT AND STORAGE OF PROTECTED MATERIAL

1.     The recipient of any Protected Material that is provided under this Protocol—including Professional Vendors—shall maintain such information in a reasonably secure and safe manner that ensures access is limited to authorized persons (as specified in the Protective Order entered in this action), and shall further exercise the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as the recipient would use with respect to its own proprietary information.

2.      If the recipient discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to the produced Protected Material, the Receiving Party shall:

a.      Promptly provide written notice to Producing Party of such breach within twenty-four (24) hours of the breach discovery;

b.      Investigate and make reasonable efforts to remediate the effects of the breach, and provide Producing Party with assurances that such breach shall not recur; and

c.      Provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach.

d.      The Requesting Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

e.      The Requesting Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access and/or correct the breach.

**J.      NO EFFECT ON DISCOVERY OR ADMISSIBILITY**

1.      This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing in this Protocol shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable.  Nothing in this Protocol shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any

document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time

### K.   ROLLING PRODUCTIONS

1.     The Parties understand that this Protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Protocol waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations prescribed in the Federal Rules of Civil Procedure, or the Parties' 502(d) obligations, and other obligations pursuant to the Protective Order entered in this case.

### L.   THIRD-PARTY PRODUCTIONS

1.     A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third Parties produce documents within their custody and control in accordance with the specifications set forth herein. A party has custody and control over documents if it possesses the documents and/or can legally obtain and produce them. The Issuing Party shall timely notify other Parties when it receives non-party productions, and within seven (7) business days shall provide copies of such productions to Requesting Parties in the format in which they were received from the third-party. In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to Requesting Parties. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third Parties to object to a subpoena.

### M.   MODIFICATION

1.      This Protocol may be modified by an Order of the Court.

**IT IS SO STIPULATED**, through Counsel of Record.

## Exhibit A: Specifications for the Production of Documents

### A.      Cover Letter and Delivery Media

Each production shall include a cover letter or cover email with information sufficient to: (i) identify all accompanying delivery media; (ii) identify the production on such media by assigning a Volume ID; and (iii) include the Bates range for the documents produced in each volume. Delivery media shall comply with the specifications below.

|  | Requirement: |
|---|---|
| **Delivery Media:** | USB hard drive, DVD and/ or CD-R (ISO9660 format) or a secure FTP site |
| **Encryption:** | All media should be encrypted |
| **Volume ID:** | CD set number, e.g. VOL1 |
| **Physical Media Label:** | TOP: <production name, volume number> <br> MIDDLE: <Bates range> <br> BOTTOM: <date> |
| **Number of Copies:** | 1 |

### B.      Deliverable Includes

| Item: | Requirement: |
|---|---|
| **a)  Load File (Metadata file)** | Concordance (.dat) |
| **b)  Image File** | Opticon (.opt) |
| **c)  Images** | • Group IV TIFF, 300 DPI, single-page TIFF images <br> • Color documents should be produced in JPEG format <br> • All black/white images must be in 1-bit TIFF images and color documents must be in 24-bit JPEG files <br> • All documents referenced in a production image load file shall have all corresponding images, text, and data <br> • All images in the delivery volume shall be contained in the image load file <br> • The image key shall be named the same as the Bates number of the page <br> • Every image will contain a unique Bates number, and a prefix that identifies the party producing the document <br> • The Bates numbers shall be sequential, and in a consistent font type, size, and spacing. <br> • Image file names cannot contain spaces, (e.g., the correct format would be AB00000001 not AB 00000001). <br> • If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. |

| Item: | Requirement: |
|---|---|
| **d)  Text Files** | • Extracted text of a document must be delivered on a document level<br>• A text file will be provided for every document<br>• For any document without extracted text or OCR, a text placeholder file will be inserted<br>• All text for a single document should be contained within one file with subfolders<br>• OCR shall be performed:<br>  o For all redacted images<br>  o For all non-searchable electronic documents (including scanned hard copy documents) for which the text cannot be extracted<br>  o Branding and endorsement shall be performed ***after*** OCR in the format agreed to by the parties<br>• All text files should be named after the beginning Bates number of the document (ProdBatesBeg.txt) |
| **e)  Native Files** | • Native file format for:<br>  o Spreadsheets (e.g., MS Excel, Lotus 123, etc.)<br>  o Presentations (e.g., MS PowerPoint, etc.)<br>  o Database (e.g., MS Access, QuickBooks, etc.)<br>  o Drawing (e.g., Visio, CAD, etc.)<br>  o Audio and Video (e.g., QuickTime Movie, Windows Media Video Voicemails)<br>• All Native files should be named after the beginning Bates number of the document (BEGDOC.xls).<br>• Documents produce in native format should be produced with a single page TIFF placeholder endorsed the Prod Beg Bates and the following language on the placeholder: "Document produced in native format."<br>• Documents produced in native format should have a file path value for the native file in the "Native Link" metadata field. |
| **f)  Exception Handling** | A single-page TIFF placeholder should be used for each document within a family that was not converted and endorsed with the Prod Bates Beg. |
| **g)  Display Hidden Text** | Maintain and display hidden text (i.e., force on all hidden data). For example, track changes in MS Word, speaker notes in MS PowerPoint, and hidden rows in MS Excel. |
| **h)  Maintain Date and Time** | Maintains the date/time of the document as it was last saved, edited, etc., not the date of collection or processing (I.e., force off auto data). |

### C.      Directory Structure

The directory structure will contain the following main folders: DATA, NATIVE, TEXT, and IMAGES. Ex: Vol1\NATIVE\000X\

| | Requirement: |
|---|---|
| **DAT File Location** | In subfolder: \DATA |
| **OPT File Location** | In subfolder: \DATA |

| | Requirement: |
|---|---|
| **Images** | In subfolder: \IMAGES<br>In sequentially numbered subfolders containing approximately 1000 images each (i.e, . . . \Images\001 ) |
| **Text Files** | In subfolder: \TEXT |
| **Native Files** | In subfolder. i.e., \NATIVE |

### D.      Delimiters

| | Requirement | |
|---|---|---|
| **Field Separator** | ASCII Code 20 ( ) | Separates load file columns |
| **Field Values** | ASCII Code 254 (þ) | Marks the beginning and end of each load file field (also known as a text qualifier) |
| **Multi-value** | ASCII Code 059 (;) | Separates distinct values in a column. This delimiter is only used when importing into a Relativity multi-choice field |
| **Newline** | ASCII 174 Code (®) | Marks the end of a line in any extracted or long text field |
| **Null Fields** | | If a Field has no value, leave blank |

### E.      Metadata

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **AttachCount** | Number of attachment(s) | NUMERICAL | Populated for parents only. | Populated |
| **Author** | Original composer of document. | TEXT | Populated attachments and loose files. | |
| **Confidentiality** | Confidential status of document. | TEXT | Populated for messages, | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| | | | attachments and loose files. | |
| **Conversation ID** | Email thread created by the email system. This is a 44-character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward of an email. | TEXT | Populated for messages only. | |
| **Custodian or Source** | Name of custodian who possessed the document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Custodian – All / All File Paths** | Name of all custodians who possessed the document and all other sources where the document was found. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Date Created** | Date from the date created property extracted from the original file or email message. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Last Modified** | Date from the modified property of a document, representing the date and time that changes to the document were last saved. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Received** | Date that the email message was received (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **Date Sent** | Date that the email message was sent (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **DocType** | Populated with: Email, Attachment, eDocPaper | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Email BCC** | Recipients of 'blind carbon copies' of the email message. | TEXT | Populated for messages only. | |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Email CC** | Recipients of 'carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email From** | Originator of the email message. | TEXT | Populated for messages only. | |
| **Email Subject** | Subject of the email message. | TEXT | Populated for messages only. | |
| **Email To** | List of recipients or addressees of the email message. | TEXT | Populated for messages only. | |
| **File Extension** | Three (or more) character extension of the document that represents the file type to the Windows Operating System. Examples are PDF, DOC, or DOCX. The file extension is identified by the file header vs. the file extension of the file name itself. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Name** | Original name of the file. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Size** | File size in kilobytes of native document. | DECIMAL | Populated for messages, attachments, and loose files. | |
| **MD5 Hash Value** | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm | TEXT | Populated for messages, attachments and loose files. | |
| **Original Folder Path** | Original folder path of file or folder name for paper documents. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg** | Beginning Bates number, or production number, on first page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg Attach** | First Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Prod Bates End** | Bates number, or production number, on last page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates End Attach** | Last Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Redactions** | Redaction status of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Time Created** | Time from the Date Created property extracted from the original file or email message. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Last Modified** | Time from the Modified property of a document, representing the date and time that changes to the document were last saved. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Received** | Time that the email message was received (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Time Sent** | Time that the email message was sent (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Title** | Title information saved in metadata with document. | TEXT | Populated for attachments and loose files. | |
| **Native Link** | Link to Native File.<br><br>Native files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.xls). | TEXT | Populated for attachments and loose files. | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Text Link** | Link to Text Files.<br><br>Text files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.txt). | TEXT | Populated for attachments and loose files. | |