UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TEAM SCHIERL COMPANIES and HEARTLAND FARMS, INC., on behalf of themselves and all others similarly situated,<br><br> *Plaintiffs,*<br><br> v.<br><br>ASPIRUS, INC., and ASPIRUS NETWORK, INC.,<br><br> *Defendants.* | Civil Action No. 3:22-cv-00580-jdp<br><br>Hon. James D. Peterson, U.S.D.J.<br><br>Hon. Stephen L. Crocker, U.S.M.J. |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT ASPIRUS NETWORK, INC.**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Team Schierl Companies and Heartland Farms, Inc., by and through their undersigned counsel, request that Defendant Aspirus Network, Inc., ("Defendant") answer each of the following Interrogatories, under oath, within 30 days.

**DEFINITIONS**

1. "Affiliated Provider" or "Affiliate" means any provider of Health Care Services that is not employed by but is otherwise affiliated with ANI, including members of ANI's Clinically Integrated Network and ANI's Affiliate Network.

2. "Agent" means any Person authorized to act on behalf of another Person, and who is not an Employee.

3. "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more Persons, together with all modifications and amendments thereto.

4. "Allowed Amount" means the maximum amount a Payer will pay for a covered Health Care Service.

5. "ANI" means "Aspirus Network, Inc.," and includes all owned, affiliated, or allied Medical Facilities and Health Care professionals, and all of ANI's divisions, departments, wholly owned or controlled subsidiaries or affiliates, other subsidiaries, parents, joint

1

ventures, branches, predecessors in interest, successors in interest, current and former Employees, agents, attorneys, or representatives, and all other Persons acting on behalf of, or at the direction of, any such entity.

6. "ANI Provider" means any provider of Health Care Services (including, but not limited to, doctors, nurses, or advanced practitioners) who is either employed by ANI or Aspirus or who is an Affiliated Provider of ANI.

7. "Anti-Tiering Provision" means any provision, written or oral, that discourages or deters a Health Plan from offering health insurance in higher and lower cost "tiers" to consumers, with coverage for more expensive Inpatient and Outpatient Service providers in higher cost tiers subject to larger cost-sharing requirements or other disincentives to Subscribers. Anti-Tiering Provisions also include Agreement terms, whether oral or written, that require You to be placed in any specific cost-sharing "tier" of any tiered Health Plan.

8. "Aspirus" means "Aspirus, Inc.," and includes all owned, affiliated, or allied Medical Facilities and Health Care professionals and all of Aspirus's divisions, departments, wholly owned or controlled subsidiaries or affiliates, other subsidiaries, parents, joint ventures, branches, predecessors in interest, successors in interest, current and former Employees, agents, attorneys, or representatives, and all other Persons acting on behalf of, or at the direction of, any such entity.

9. "Capitated Rates" or "Capitation Payments" mean fixed amounts of money per patient, per unit of time, that are paid in advance to a Health Care Provider in exchange for the provider's Agreement to provide or arrange for a specific set of Health Care Services.

10. "Certificate of Need" request governs establishment, construction, renovation and major medical equipment acquisitions of facilities, such as hospitals, nursing homes, home care agencies, and diagnostic and treatment centers.

11. "Chargemaster Rates" means the collection of standard list prices for medical services offered at a Medical Facility, such as a hospital.

12. "Communication" means oral or written communications of any kind, including without limitation, electronic communications, e-mails, facsimiles, telephone communications, correspondence, exchanges of written or recorded information, or face-to-face meetings.

13. "Competitor" means any provider of Health Care Services operating in Wisconsin who is not part of Aspirus or ANI.

14. "Complaint" refers to the current operative complaint in this action.

15. "Contracted Rates" means the total amount (including cost sharing) that a Health Plan or Payer has contractually agreed to pay a participating provider or facility for covered

items and services, including through a third-party administrator ("TPA") or pharmacy benefit manager ("PBM").

16. "CPT Codes" describes uniform codes for Health Care Services provided to treat patients.

17. "Data" means machine-readable computer files and their supporting materials, including but not limited to any documentation, Data dictionaries, reference files, database maps, crosswalks, and lookup tables. The term "computer files" includes information stored in, or accessible through, computer or other information retrieval systems.

18. "Document" includes, without limitation, the original (or identical duplicate when the original is not available) and all non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notation, or highlighting of any kind) and drafts of all writings, whether handwritten, typed, printed or otherwise produced, and includes, without limitation, letters, correspondence, memoranda, legal pleadings, notes, reports, Agreements, calendars, diaries, travel or expense records, summaries, records, messages or logs of telephone calls, conversations or interviews, telegrams, instant messages, text messages (SMS or other), mailgrams, facsimile transmissions (including cover sheets and confirmations), electronic mail, minutes or records of meeting, compilations, notebooks, laboratory notebooks, work papers, books, pamphlets, brochures, circulars, manuals, instructions, sales, advertising or promotional literature or materials, ledgers, graphs, charts, blue prints, drawings, sketches, photographs, film and sound reproductions, tape recordings, or any other tangible materials on which there is any recording or writing of any sort.  The term also includes the file, folder tabs, and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy of all documents requested herein.

19. "DRG Codes" describes uniform codes for classifying Health Care Services into groups expected to have similar resource costs.

20. "Employee" means, without limitation, any current or former officer, director, executive, manager, staff member, Agent or other Person performing work on a salaried, hourly, independent contractor, or other basis.

21. "Gag Clause" means any Agreement, contract term, Pricing term, requirement, negotiation tactic or condition, and/or offer, whether written or oral, that has the effect of preventing Payers from communicating with employers and patients about the prices paid for Health Care.

22. "Health Care Services" or "Health Care" means any medical, clinical, laboratory, or therapeutic services provided to any patient by any Medical Facility or Employee of any Medical Facility, including doctors, nurses, and/or advanced practitioners.

23. "Health Plan" means commercial or self-insured health insurance products offered in the individual, group, fully insured, and self-funded health insurance markets, and plans denominated as "PPO," "HMO," "POS," "HDHP," or otherwise.

24. "Including" is used to illustrate a Request with particular types of documents requested and should not be construed as limiting the Request in any way.

25. "Independent Health Care Provider" means any Health Care provider or group of providers that is not employed by, owned by, or affiliated in any way with ANI or Aspirus, including any Competitor Medical Facility or Health Care system.

26. "Inpatient Services" means general acute care ("GAC") services in hospitals, consisting of medical and surgical diagnostic and treatment services that include a patient's overnight stay in the hospital.

27. "Medical Facility" means any location or building, such as a hospital, that provides (a) Inpatient Services requiring a patient's overnight stay, and/or (b) Outpatient Services that do not require an overnight stay.

28. "Member" means any person enrolled in a Health Plan whose fees for Health Care Services are paid in whole or in part through commercial health insurance.

29. "Narrow Network" means a type of Health Plan that requires Members to receive Health Care in their Provider Network of doctors, hospitals, Outpatient facilities, or laboratories to receive insurance discounts. If a Member with a Narrow Network Health Plan receives Health Care outside of their Provider Network, they're responsible to pay for the full cost of their Health Care.

30. "Network" means the facilities, providers, and suppliers a Payer has an Agreement with to provide Health Care Services.

31. "Network Adequacy Requirements" refers to a Payer's ability to deliver the benefits promised by providing reasonable access to Health Care Services included under the terms of the contract.

32. "Network Participation Agreements" means Agreements with Provider Networks to bring their services and/or facilities into a Network.

33. "Non-Participating Rate" means the rate charged by any Health Care Provider that is not in-network or does not participate in a Health Plan's product or Provider Network.

34. "Outpatient Services" refers to the medical services that are not Inpatient Services or that do not require an overnight stay.

35. "Patient Invoices" means a billing Document that itemizes payments requested of a medical patient for Health Care Services rendered at a Medical Facility.

36. "Payer" means any entity that pays for Health Care Services for any patient, including commercial insurance providers (e.g., Blue Cross, United, Cigna, or Aetna) and self-insured entities.

37. "Person" includes, without limitation, any natural person, corporation, partnership, government entity, and any other form of legal or business entity.

38. "Pricing" includes, without limitation, health claims Data, including billing related information (e.g. billing codes, claim codes, billing information or claims information that a physician, pharmacy, hospital, or other Health Care provider submits to an insurance company relating to the diagnoses, procedures, drugs, or other treatment a patient receives), and any contract or payment-related information (e.g. information tracking the contracting entity and/or paying entity and any payments received, including but not limited to any billing dispute, any tracking of payments, or adjustments made for any reason to payments).

39. "Provider Network" means a list of Health Care providers, such as hospitals or doctors, that Payers contract with to provide Health Care Services to its Members as "in-network" Providers.

40. "Reference-Based Pricing" refers to Pricing where reimbursement rates for medical services are based on a specific reference point rather than on a provider's billed charge.

41. "Referral Condition" means any portion of any Agreement, whether written or oral, relating to referrals of patients by providers.

42. "Relating to," "referring to," "regarding," or "with respect to" mean without limitation discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, concerning, containing, mentioning, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

43. "Repricing Algorithms" are methods used to compare total medical payments across different fee structures.

44. "Steering Restriction" means any clause or provision in a contract that in any way restricts the ability to or manner in which a Payer or its Employees incentivize or encourage an insured to utilize different Health Care options or in any way restricts the ability to or manner in which a Payer or its Employees inform any insured of the availability, cost, or benefit of different Health Care options. Examples of Steering Restrictions include restrictions on Narrow Networks and Tiered Networks.

45. "Subscriber" means any Person contracting with a Payer on behalf of Members. Subscribers include entities who negotiate on behalf of their Employees.

46. "Tiered Network" means a Health Plan that divides Health Care providers into levels, or "tiers," based on the value of Health Care that they provide, considering quality and cost of care. The Health Care providers that deliver care that is high value (lower cost and higher quality) are in the highest tier.

47. "Tying Condition" means any Agreement, contract term, Pricing term, requirement, negotiation tactic, negotiation condition, and/or offer, whether written or oral, that has the effect of requiring any Payer that wants to include some Aspirus or ANI Medical Facility or provider to include another Aspirus or ANI Medical Facility or provider in its Health Plans, or that creates an incentive (based on pricing or other factors) for any Payer that wants to include some Aspirus or ANI Medical Facility or provider to include another Aspirus or ANI Medical Facility or provider in its Health Plans.

48. "You" or "Your" means your organization and its predecessors, successors, subsidiaries, departments, divisions, affiliates, and/or Agents (including, without limitation, any third-party recruiting, hiring, or headhunting firm), together with all present and former directors, officers, Employees, Agents, representatives, or any Persons acting or purporting to act on behalf of You.

## INSTRUCTIONS

1. The Definitions above are provided only for purposes of discovery, in conformance with Rule 33 of the Federal Rules of Civil Procedure, and are not intended to be used for any purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or utilize different Definitions for any other purpose.

2. The terms defined above and the individual Interrogatories below are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3. All words not defined in the Definitions shall be construed using their plain and ordinary meaning. If more than one meaning can be ascribed to a word, the meaning that would make a document be covered by the Interrogatories should be used, unless You provide written notice of the specific ambiguity.

4. In answering and responding to these Interrogatories, You shall furnish such information and Documents in Your possession, custody or control, including information that is in the possession, custody or control of Your Agents, Employees, consultants, accountants, investigators, and (subject to any otherwise applicable privileges) attorneys.

5. Each Interrogatory herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request. Where the context in an Interrogatory makes it appropriate, each singular word shall include its plural and each plural word shall include its singular.

6. Your obligation to respond to these Interrogatories is a continuing one. If, after responding to these Interrogatories, You obtain or become aware of any new or additional information pertaining to an Interrogatory contained herein, You must supplement Your answer in accordance with Federal Rules of Civil Procedure 26 and 33.

7. If You answer any Interrogatory by reference to business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure and as the term "business record" is defined under the Federal Rules of Evidence, produce the business records and identify such Documents by bates number, as well as the name of the Employee certifying the Documents as business records for purposes of answering the Interrogatory.

8. Each Interrogatory shall be answered separately and fully in writing under oath, unless it is objected to. If You have any good faith objections to any request or any part thereof, the specific nature of the objection and whether it applies to the entire Interrogatory or to a part of the Interrogatory shall be stated in accordance with Rule 33 of the Federal Rules of Civil Procedure. If there is an objection to any part of an Interrogatory, then the part objected to should be identified and information responsive to the remaining unobjectionable part should be timely provided. Further, if You object to part of an Interrogatory, You must state the basis of Your objections in accordance with Rule 33.

9. To the extent that You elect to produce Documents in response to any of the Interrogatories, any such production shall be accompanied by a transmittal letter that includes the case caption; production volume name; encryption method/software used; and passwords for any password protected files.

10. The responses are to be signed by the Person making them and the objections signed by the attorney making them.

11. Each Interrogatory, and each subpart thereof, shall be separately set forth verbatim in Your response and accorded a separate answer.

12. No part of an Interrogatory shall be left unanswered merely because an objection was interposed to another part of the Interrogatory.

13. If You object to any Interrogatory or subpart thereof, the objection shall state with specificity all grounds for the objection. Any ground not stated shall be waived.

14. If You are unable to answer any Interrogatory, the reasons for Your inability to answer shall be separately stated in detail for each Interrogatory.

15. Failure to provide information in response to these Interrogatories will be deemed a waiver of Your right to produce such evidence at trial. Plaintiffs reserve the right to move to preclude the introduction of any evidence not produced in response to these Interrogatories.

## **RELEVANT TIME PERIOD**

1. Unless otherwise noted in the body of a Request, the Relevant Time Period of these Interrogatories is January 1, 2014 through the present (the "Relevant Time Period" or "Relevant Period").

## **INTERROGATORIES TO ANI**

**INTERROGATORY NO. 1:** Please describe each instance in which a current or former Affiliated Provider has Communicated with You about entering into an Agreement with a Payer, including Communications relating to becoming part of a Provider Network other than ANI, including by providing (a) the name and contact information of such Affiliated Provider; (b) the date(s) of the Communication(s); (c) the name(s) of the Aspirus and/or ANI Employee(s) or Agent(s) involved in such Communication(s); (d) the name(s) of the Affiliated Provider Employee(s) or Agent(s) involved in such Communication(s); and (e) the outcome of such Communications, including whether such Affiliated Provider was granted permission or consent to enter into such an Agreement.

**INTERROGATORY NO. 2:** Please describe each instance in which You have Communicated about prices for Health Care Services (including about Reference-Based Pricing) with any Agent, Employee, or other representative of any Independent Health Care Provider, including (a) the name and contact information of such Independent Health Care Provider; (b) the date(s) of the Communication(s); (c) the name(s) of the Aspirus and/or ANI Employee(s) or Agent(s) involved in such Communication(s); (d) the name(s) of the Independent Health Care Provider's Employee(s) or Agent(s) involved in such Communication(s); and (e) the beginning bates number of any Document reflecting or relating to such Communication(s).

**INTERROGATORY NO. 3:** For any Agreement between You and any Provider that contains any Referral Condition, please provide (a) the date when any such Agreement was first used by You; (b) your Employee(s) or Agent(s) involved in the drafting, negotiation, promulgation, or enforcement of any such Agreement; and (c) the date(s) of any Communication(s) between or among You, Aspirus, and any provider of Health Care Services regarding the interpretation, drafting, negotiation, promulgation, or enforcement of any such Referral Condition.

**INTERROGATORY NO. 4:** Please provide the names and contact information for all Affiliated Providers in the ANI Provider Network, by year.

Dated:  September 6, 2023

*/s/ Timothy W. Burns*
Timothy W. Burns
Nathan Kuenzi
**BURNS BAIR LLP**
10 E. Doty Street, Suite 600
Madison, WI 53703
Phone: (608) 286-2808
tburns@burnsbair.com
nkuenzi@burnsbair.com

Daniel J. Walker (*pro hac vice*)
Robert E. Litan (*pro hac vice*)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Phone: (202) 559-9745
dwalker@bm.net
rlitan@bm.net

Eric L. Cramer (*pro hac vice*)
Shanon J. Carson
Abigail J. Gertner (*pro hac vice*)
Robert C.S. Berry (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000
ecramer@bm.net
scarson@bm.net
agertner@bm.net
rberry@bm.net

Jamie Crooks (*pro hac vice*)
**FAIRMARK PARTNERS LLP**
1825 7th Street, NW, Suite 821
Washington, DC 20001
Phone: 619-507-4182
jamie@fairmarklaw.com

*Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 6, 2023, a true and correct copy of the foregoing was served upon all counsel of record via e-mail.

Dated: September 6, 2023 　　　　　　　　　　　　　*/s/ Daniel J. Walker*
　　　　　　　　　　　　　　　　　　　　　　　　　　Daniel J. Walker