# EXHIBIT "A"

**Archived:** Monday, November 20, 2023 3:19:27 PM
**From:** Robert Berry
**Mail received time:** Tue, 31 Oct 2023 08:31:52
**Sent:** Tue, 31 Oct 2023 12:31:29
**To:** Papa, Vincent C.  Zachary Caplan  Naik, Amar S.  Johns, Zachary M.  Kantor, Ryan M.  Kliebard, Kenneth M.  Hoak, Ryan  Milner, Scott A.  Fee, R. Brendan  Splitek, Matthew J.  Oesch, Nathan J.  de Heer, Aurora H.
**Cc:** Daniel J. Walker  Eric L. Cramer  Alexander Rose  Jamie Crooks  Eric Chianese  Doi, Elsa
**Subject:** RE: Team Schierl v. Aspirus (W.D. Wis.) / Aspirus-ANI custodians Heywood, Smith, Verstegen, and Hammig
**Importance:** Normal
**Sensitivity:** None

---

[EXTERNAL EMAIL]
Hello Vinny,

**On point 1**, thank you for agreeing to Plaintiffs' October 26 proposal concerning Mr. Heywood, Dr. Smith, Mr. Verstegen, and Mr. Hammig. Plaintiffs confirm that this concludes our custodian negotiations at this time. Plaintiffs reserve all rights to request additional search terms, time periods, or custodians based on our review of documents.

**On point 2,** there are additional RFPs that Aspirus and ANI have indicated they will not respond to beyond those summarized in your email (RFP to Aspirus No. 23; RFP to ANI No. 22; RFP No. 59 to Aspirus and ANI; and RFP Nos 57 and 58 to Aspirus and ANI). These additional RFPs were summarized in Plaintiffs' letter of July 21, 2023. We would like to discuss each of these RFPs. Please provide times that you are available to meet and confer.

To Aspirus these are:

- Request No. 4, "All Documents (including, but not limited to, Agreements or Communications) relating to any Tying Condition."
- Request No. 5, "All Documents (including, but not limited to, Agreements or Communications) relating to any Steering Restriction."
- Request No. 6, "All Documents (including, but not limited to, Agreements or Communications) relating to any Anti-Tiering Provision."
- Request No. 7, "All Documents (including, but not limited to, Agreements or Communications) relating to any Gag Clause."
- Request No. 8, "All agendas, minutes, notes, or memoranda of any meeting of the Board of Directors or any committee thereof at which any Tying Condition, Steering Restriction, Anti-Tiering Provision, or Gag Clause was discussed."
- Request No. 35, "All Documents containing any analysis of the possible or actual effects on Your revenues, finances, profitability, viability or in any other way, including any possible or actual financial or other benefit to You, of: (a) Steering Restrictions in Your negotiations or Agreements with Payers; (b) Tying Conditions in Your negotiations or Agreements with Payers; (c) Anti-Tiering Provisions in Your negotiations or Agreements with Payers; (d) Gag Clauses in Your negotiations or Agreements with Payers; (e) Payers steering customers or potential customers to Health Care Services providers other than You; (f) Payers including only certain of Your Medical Facilities in Health Plan Provider Networks; and (g) Payers withholding from customers information about any other Health Care Services provider.
- Request No. 48, "Documents sufficient to identify the names and qualifications of all physicians who are employed at, or work in any capacity at, all Medical Facilities under Your control."
- Request No. 60, "All Documents relating to Your corporate policies or practices regarding compliance with United States or Wisconsin antitrust or consumer protection laws."

To ANI these are:

- Request No. 4, "All Documents (including, but not limited to, Agreements or Communications) relating to any Tying Condition."

- Request No. 5, "All Documents (including, but not limited to, Agreements or Communications) relating to any Steering Restriction."
- Request No. 6, "All Documents (including, but not limited to, Agreements or Communications) relating to any Anti-Tiering Provision."
- Request No. 7, "All Documents (including, but not limited to, Agreements or Communications) relating to any Gag Clause."
- Request No. 8, "All agendas, minutes, notes, or memoranda of any meeting of the Board of Directors or any committee thereof at which any Tying Condition, Steering Restriction, Anti-Tiering Provision, or Gag Clause was discussed."
- Request No. 35, "All Documents containing any analysis of the possible or actual effects on Your revenues, finances, profitability, viability or in any other way, including any possible or actual financial or other benefit to You, of: (a) Steering Restrictions in Your negotiations or Agreements with Payers; (b) Tying Conditions in Your negotiations or Agreements with Payers; (c) Anti-Tiering Provisions in Your negotiations or Agreements with Payers; (d) Gag Clauses in Your negotiations or Agreements with Payers; (e) Payers steering customers or potential customers to Health Care Services providers other than You; (f) Payers including only certain of Your Medical Facilities in Health Plan Provider Networks; and (g)Payers withholding from customers information about any other Health Care Services provider."
- Request No. 48, "Documents sufficient to identify the names and qualifications of all physicians who are employed at, or work in any capacity at, all Medical Facilities under Your control.
- Request No. 60, "All Documents relating to Your corporate policies or practices regarding compliance with United States or Wisconsin antitrust or consumer protection laws."

**On point 3**, we would also like to discuss your proposal to exclude documents concerning "revenue, operating costs, profits, and related financial data" during our meet and confer.

Best,

Bob

**Robert Berry** / *Associate*

☐ 215.875.3058    ☐ 267.637.2567

☐ 1818 MARKET STREET, SUITE 3600
  PHILADELPHIA, PA 19103

**From:** Papa, Vincent C. <vincent.papa@morganlewis.com>
**Sent:** Monday, October 30, 2023 2:06 PM
**To:** Zachary Caplan <zcaplan@bm.net>; Naik, Amar S. <amar.naik@morganlewis.com>; Johns, Zachary M. <zachary.johns@morganlewis.com>; Kantor, Ryan M. <ryan.kantor@morganlewis.com>; Kliebard, Kenneth M. <kenneth.kliebard@morganlewis.com>; Hoak, Ryan <ryan.hoak@morganlewis.com>; Milner, Scott A. <scott.milner@morganlewis.com>; Fee, R. Brendan <brendan.fee@morganlewis.com>; Splitek, Matthew J. <matthew.splitek@quarles.com>; Oesch, Nathan J. <nathan.oesch@quarles.com>; de Heer, Aurora H. <aurora.deHeer@morganlewis.com>
**Cc:** Daniel J. Walker <dwalker@bm.net>; Robert Berry <rberry@bm.net>; Eric L. Cramer <ecramer@bm.net>; Alexander Rose <alexander@fairmarklaw.com>; Jamie Crooks <jamie@fairmarklaw.com>; Eric Chianese <eric@fairmarklaw.com>; Doi, Elsa <elsa.doi@morganlewis.com>
**Subject:** RE: Team Schierl v. Aspirus (W.D. Wis.) / Aspirus-ANI custodians Heywood, Smith, Verstegen, and Hammig

Zach,

*First*, thank you for confirming Plaintiffs' acceptance of Defendants' proposals of narrowed search terms for Paul Verstegen and Bryant Hammig for the January 1, 2016 to October 10, 2018 time period. And, in the spirit of compromise and to prevent

further delay, Defendants are willing to agree to run the full panel of 83 agreed-upon search terms across Dr. Renee Smith's data from October 1, 2016 to October 12, 2022 and across Matt Heywood's data from October 11, 2018 to October 12, 2022— provided that the parties' existing agreements on search terms and time periods for Defendants' custodians are <u>final</u> unless and until Plaintiffs can make a good faith factual showing of why additional custodians are necessary based upon their review of Defendants' production materials. Defendants reserve their objection to seeking further discovery from Mr. Heywood under the apex doctrine. At this point, Defendants have agreed to expansive searches of 17 custodians over a broad time period that, in some cases, far exceed the proposed class period. We have also agreed to search and produce responsive documents from noncustodial sources, such as Epic. Given the breadth of materials we have agreed to collect, process, cull, review, and produce, along with the immense burden on a non-profit healthcare system of doing so, Defendants will only agree to Plaintiffs' proposal if this concludes our custodial negotiations at this time. We are hopeful that the parties can finalize these parameters so that Defendants can move forward with gathering and reviewing the above-referenced materials. Please confirm at your earliest convenience.

**Second**, in response to your request concerning Plaintiffs' RFPs that Defendants have objected to, we refer you to our written responses and objections. Further, on our October 12, 2023 meet-and-confer, we identified and discussed the specific materials that Defendants stated they will not produce. These include: (1) individual employment agreements (RFP to Aspirus No. 23; RFP to ANI No. 22); (2) Defendants' data retention policies (RFP Nos. 59 to Aspirus and ANI; and (3) any documents or information in response to RFPs Nos. 57 and 58 (as propounded upon both Aspirus, Inc. ("Aspirus") and Aspirus Network, Inc. ("ANI")). It is our understanding that Plaintiffs (1) agreed that individual employment agreements are not responsive to any of Plaintiffs' RFPs; and (2) agreed to withdraw their RFP No. 59 issued to both Aspirus and ANI seeking "policies, procedures, and guidelines" relating to the retention of documents. With respect to RFPs Nos. 57 and 58, Defendants explained the several reasons why these Requests, which seek any document or piece of information submitted to any government antitrust agency, are improper. These requests are untethered to the allegations in Plaintiffs' Complaint and amount to a fishing expedition. To the extent there are facts Plaintiffs wish to explore that relate to the allegations and claims in the Complaint, the parties' above-referenced agreement on custodians and non-custodial sources provide more than ample opportunity to discover such facts. To reiterate, these requests are improper because they seek irrelevant information and are unduly burdensome, harassing, and not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Please let us know if you would like to discuss these, or any of Defendants' other objections to Plaintiffs' RFPs, further.

**Third**, we appreciate Plaintiffs' input on those RFPs that overlap, reproduced below. With respect to the topics ==highlighted== below, Defendants are willing to agree to produce "*data* relating to Aspirus's revenue, operating costs, profits, and related financial data, including any data dictionaries or other reference documents explaining the data being produced." We are in the process of confirming what non-custodial sources contain this information and will follow-up shortly. Defendants also agree to produce any data, documents, or communications referencing Aspirus's or ANI's financial performance that are also relevant to any other topic listed in the below charts. We do not, however, see a basis to provide communications just because they include a reference Aspirus's or ANI's finances. To interpret these topics otherwise would sweep in virtually every communication that members of the finance team had or instances where someone references a financial metric in passing. We do not believe this type of overbreadth is what the parties intended as to the scope of these RFPs. Please confirm at your earliest convenience and let us know if helpful to discuss further.

We are continuing to review Plaintiffs' other suggestions (in blue) and do not have any other clarifications at this time.

I.   **RFPs to Aspirus**

| TOPIC | REQUEST NOS. |
|---|---|
| Documents relating to Aspirus's organizational structure and employees, including policies and analyses related to performance-based compensation for providers of Health Care Services. | 9, 10, 11, 22, 23, 63 |
| Documents and data relating to Aspirus's revenue, operating costs, profits, and related financial data, including any data dictionaries or other reference documents explaining the data being produced. | 40, 42, 43, 46, 47 |
| Documents and data relating to the types and volume of healthcare services performed, patient data, prices charged and how those prices are determined, cost | 13, 14, 15, 16, 36, 41, 44, 45, 48, 49, 50, 51, 52, 53, 54 |

| | |
|---|---|
| of care, quality of care, and clinical and financial integration. | |
| Documents and communications relating to Aspirus's contractual relationship with payors, including the marketing of Aspirus and ANI to payors. | 2, 17, 18, 19, 20, 39, 56 |
| Documents and communications relating to Aspirus's contractual relationships with healthcare providers in Wisconsin, including ANI-affiliated providers. These requests include documents and communications related to provider referral obligations, provider admitting privileges, provider pricing, and providers contracting with payors. | 1, 12, 21, 27, 28, 29, 30, 37, 38, 55 |
| Documents relating to Aspirus's competition, including any market analysis, geographic areas of competition, competing networks, and competing providers. | 31, 32, 33, 34 |
| Documents relating to Plaintiffs Team Schierl Companies and Heartland Farms, Inc., as well as any documents received from nonparties during discovery or that Aspirus intends to use at trial. | 61, 62, 64 |

II.     RFPs to ANI

| TOPIC | REQUEST NOS. |
|---|---|
| Documents relating to ANI's organizational structure and employees, including policies and analyses related to performance-based compensation for providers of Health Care Services.. | 9, 22, 48, 49, 63 |
| Documents and data relating to ANI's revenue, operating costs, profits, and related financial data, including any data dictionaries or other reference documents explaining the data being produced. | 35, 40, 41 |
| Documents and data relating to the types and volume of healthcare services performed, patient data, prices charged and how those prices are determined, cost of care, quality of care, and clinical and financial integration. | 11, 12, 13, 14, 36, 43, 45, 46, 50, 51, 52, 53, 54 |
| Documents and communications relating to Aspirus's contractual relationship with payors, including the marketing of Aspirus and ANI to payors. | 2, 3, 10, 15, 16, 17, 18, 19, 39, 55 |
| Documents and communications relating to ANI's contractual relationships with healthcare providers. These requests include documents and communications related to provider referral obligations, provider admitting privileges, provider pricing, and providers contracting with payors. | 1, 20, 21, 26, 27, 28, 29, 30, 37, 38, 56 |
| Documents relating to Aspirus's competition, including any market analysis, geographic areas of competition, competing networks, and competing providers. | 31, 32, 33, 34, 44 |
| Documents relating to Plaintiffs Team Schierl Companies and Heartland Farms, Inc., as well as any documents received from nonparties during discovery or that Aspirus intends to use at trial. | 61, 62, 64 |

**Vincent C. Papa**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5324 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
vincent.papa@morganlewis.com | www.morganlewis.com



**From:** Zachary Caplan <zcaplan@bm.net>
**Sent:** Thursday, October 26, 2023 3:27 PM

**To:** Naik, Amar S. <amar.naik@morganlewis.com>; Johns, Zachary M. <zachary.johns@morganlewis.com>; Papa, Vincent C. <vincent.papa@morganlewis.com>; Kantor, Ryan M. <ryan.kantor@morganlewis.com>; Kliebard, Kenneth M. <kenneth.kliebard@morganlewis.com>; Hoak, Ryan <ryan.hoak@morganlewis.com>; Milner, Scott A. <scott.milner@morganlewis.com>; Fee, R. Brendan <brendan.fee@morganlewis.com>; Splitek, Matthew J. <matthew.splitek@quarles.com>; Oesch, Nathan J. <nathan.oesch@quarles.com>; de Heer, Aurora H. <aurora.deHeer@morganlewis.com>
**Cc:** Daniel J. Walker <dwalker@bm.net>; Robert Berry <rberry@bm.net>; Eric L. Cramer <ecramer@bm.net>; Alexander Rose <alexander@fairmarklaw.com>; Jamie Crooks <jamie@fairmarklaw.com>; Eric Chianese <eric@fairmarklaw.com>
**Subject:** Team Schierl v. Aspirus (W.D. Wis.) / Aspirus-ANI custodians Heywood, Smith, Verstegen, and Hammig

[EXTERNAL EMAIL]
Amar,
Thank you for your October 23 email. Although we continue to disagree, Plaintiffs are willing to accept your proposal of narrowed search terms for Mr. Verstegen and Mr. Hammig for the January 1, 2016 to October 10, 2018 time period only in the spirit of compromise. However, for the reasons discussed below, Plaintiffs cannot accept your proposals for Mr. Heywood or Dr. Smith.

- **Mr. Heywood.** It is beyond dispute that Mr. Heywood has relevant and unique information. Since Mr. Heywood took over as CEO of Aspirus in 2013, he has overseen Aspirus' growth from a $600 million organization to a system that has billions of dollars in revenue. As you have said on calls, Aspirus is a relatively "flat organization." It is our understanding that Mr. Heywood was ultimately responsible for all business decisions related to Aspirus's operations and its expansion within North Central Wisconsin, including strategies as to payers and providers. Defendants do not dispute that Mr. Heywood is likely to have relevant materials. Instead, Defendants argue that Mr. Heywood should be treated differently from other custodians because of his job title as CEO. However, the test is not a custodian's job title, but, rather, whether the inclusion of a custodian "could lead to relevant information" regarding the claims at issue. *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *10 (N.D. Ill. June 26, 2023). *See also In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *10 (N.D. Cal. Nov. 14, 2021) (noting that "the apex doctrine does not apply to this dispute, which concerns whether senior executives . . . should be added as document custodians" and citing cases). Given Mr. Heywood's long tenure with Aspirus, including throughout the relevant time period, as well as his service on both the ANI and Aspirus boards of directors, he is highly likely to have relevant, non-duplicative materials covering a wide variety of subjects. *See HNA Sweden v. Equities First Holdings, LLC*, 2021 WL 11961093, at *19 (S.D. Ind. Nov. 1, 2021) (noting that to the extent the CEO's and Chairman's files were duplicative of other document custodians "then the use of the parties' agreed-upon search terms will ensure that there is little additional burden in searching their documents"). In short, Defendants have provided no valid reason that Mr. Heywood should be treated differently from other custodians, and applying a different set of complex search terms for him would needlessly complicate discovery. Thus, Defendants should run all of the agreed search terms on Mr. Heywood's materials.

- **Dr. Smith.** Dr. Smith has relevant and unique information covering a variety of subjects going back to 2016. Dr. Smith was the Executive Director of ANI during the entire time period Plaintiffs have requested. In her own words on LinkedIn, Dr. Smith was "[a]ccountable for [the] financial health of [ANI]" and led a team "in the management of network contracting[.]" She oversaw "contract negotiation strategy with members and health plans" as well as a "comprehensive network restructure and re-contracting to improve alignment of physician practice members and enhance clinical integration." It is also our understanding that Dr. Smith sent many letters and other communications to providers trying to contract with ANI or trying to contract with other payers, including in the January 1, 2016 to October 10, 2018 time period. In short, Dr. Smith's materials going back to 2016 are relevant and Defendants have provided no valid reason that these materials should be treated differently from her other materials. Thus, Defendants should run all of the agreed search terms on Dr. Smith's materials for the January 1, 2016 to October 10, 2018 time period.

Please let us know if Defendants accept Plaintiffs' compromise proposal. To the extent that Defendants decline, then Plaintiffs reserve all rights to seek relief from the Court including requesting that all agreed search terms be applied to Mr. Verstegen and Mr. Hammig for the January 1, 2016 to October 10, 2018 time period.

Additionally, we previously asked for some time to meet and confer about the RFPs that Defendants said that they would not respond to, and we reiterate that request.

Thanks,
Zach

**Zachary Caplan** / *Shareholder*

215.875.5704

1818 MARKET STREET, SUITE 3600
PHILADELPHIA, PA 19103

-**External sender. Please use caution when clicking on any attachments or links**-