**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

TEAM SCHIERL COMPANIES and
HEARTLAND FARMS, INC., on behalf of
themselves and all others similarly situated,

        *Plaintiffs*,

      v.

ASPIRUS, INC. and ASPIRUS NETWORK,
INC.,

        *Defendants*.

Civil Action No. 3:22-cv-00580-jdp

Hon. James D. Peterson, U.S.D.J.
Hon. Anita M. Boor, U.S.M.J.

**PUBLIC REDACTED VERSION**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**LIMITED MOTION FOR SUMMARY JUDGMENT**
**AS TO THE PLAINTIFFS' LACK OF ANTITRUST INJURY**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

I.      Aspirus, Inc. and Aspirus Network, Inc. ................................................................... 3

II.     Plaintiffs' Use of Network Vendors The Alliance and UHC to Access In-Network
        Healthcare Providers. ................................................................................................. 5

        A.      The Alliance. ................................................................................................... 6

        B.      UHC. ................................................................................................................ 7

III.    Plaintiffs' Use of Third-Party Administrators to Adjudicate and Pay Claims. .................. 8

ARGUMENT ........................................................................................................................ 8

I.      There Is No Genuine Dispute of Material Fact That Plaintiffs Have Failed to
        Substantiate an Antitrust Injury. ................................................................................ 9

II.     There Is No Genuine Dispute of Material Fact Concerning Plaintiffs' Inability to
        Show Causation, as Required for Antitrust Injury. ................................................... 11

        A.      There Is No Evidence That the Rates The Alliance and UHC Negotiated
                Would Have Been Lower But For the Challenged Conduct. .............................. 12

                1.      Plaintiffs Have Failed to Create a Genuine Dispute as to Whether
                        The Alliance Would Have Negotiated Lower Rates in the But-For
                        World. ................................................................................................. 13

                2.      With Respect to Heartland Farms, There is No Genuine Dispute as
                        to Whether UHC Would Have Negotiated Lower Rates in the But-
                        For World. ........................................................................................... 15

        B.      Plaintiffs' Expert's Causation Opinions Do Not Defeat Summary
                Judgment. ...................................................................................................... 17

III.    Plaintiffs Are Indirect Purchasers and Thus Cannot Establish Antitrust Injury. ............. 21

CONCLUSION .................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amerinet, Inc. v. Xerox Corp.*,
  972 F.2d 1483 (8th Cir. 1992) ......................................................................................10, 11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................................................9

*Apple Inc. v. Pepper*,
  587 U.S. 273 (2019)....................................................................................................22, 23, 24

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)....................................................................................................................19

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) ...............................................................................................23, 26

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)....................................................................................................................19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)....................................................................................................................12

*Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*,
  935 F.2d 1469 (7th Cir. 1991) ...............................................................................................22

*California v. ARC Am. Corp.*,
  490 U.S. 93 (1989)......................................................................................................................22

*Carlson v. CSX Transp., Inc.*,
  758 F. 3d 819 (7th Cir. 2014) ...............................................................................................20

*Collins v. Assoc. Pathologists, Ltd.*,
  844 F.2d 473 (7th Cir. 1988) ...............................................................................................9

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
  998 F.2d 391 (7th Cir. 1993) ...................................................................................... *passim*

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968)....................................................................................................................22

*In re Humira (Adalimumab) Antitrust Litig.*,
  465 F. Supp. 3d 811 (N.D. Ill. 2020) ...................................................................11, 19, 20, 21

*Illinois Brick Co. v. Illinois*,
　431 U.S. 720 (1977) ..................................................................................... *passim*

*Johnson v. Advocate Health & Hosps. Corp.*,
　892 F.3d 887 (7th Cir. 2018) .................................................................................9

*Juarez v. Ameritech Mobile Commc'ns, Inc.*,
　957 F.2d 317 (7th Cir. 1992) .................................................................................9

*Kansas v. UtiliCorp United, Inc.*,
　497 U.S. 199 (1990)..............................................................................................22

*Kochert v. Greater Lafayette Health Servs., Inc.*,
　463 F.3d 710 (7th Cir. 2006) ...............................................................................12

*In re Lipitor Antitrust Litig.*,
　No. 12-cv-2389, 2024 WL 2866654 (D.N.J. June 6, 2024)..............................20, 21

*Marion Healthcare, LLC v. S. Ill. Healthcare*,
　No. 12-cv-871, 2020 WL 1527772 (S.D. Ill. Mar. 31, 2020)....................11, 12, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986)................................................................................................9

*McBride v. Rev Recreation Grp., Inc.*,
　No. 21-cv-614, 2022 WL 18232012 (W.D. Wis. Dec. 13, 2022).............................9

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
　708 F.2d 1081 (7th Cir. 1983) .............................................................................10

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank*,
　877 F.2d 1333 (7th Cir. 1989) ...............................................................................8

*Miller v. Javitch, Block & Rathbone, LLP*,
　397 F. Supp. 2d 991 (N.D. Ind. 2005) ...................................................................9

*In re NorthShore Univ. HealthSystem Antitrust Litig.*,
　No. 07-cv-4446, 2018 WL 2383098 (N.D. Ill. Mar. 31, 2018) ............................23, 24, 25, 26

*Shurr v. A.R. Siegler, Inc.*,
　70 F. Supp. 2d 900 (E.D. Wis. 1999)....................................................................19

*United Food & Com. Workers Local 1776 & Participating Employers Health &*
　*Welfare Fund v. Teikoku Pharma USA*,
　296 F. Supp. 3d 1142 (N.D. Cal. 2017) ...............................................................20

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
　868 F.3d 132 (3d Cir. 2017)..............................................................................20, 21

*Yeatts v. Zimmer Biomet Holdings, Inc.*,
  940 F.3d 354 (7th Cir. 2019) ...............................................................................................9

**Statutes**

Clayton Act, 15 U.S.C. §§ 15, 26 ..................................................................................10, 11

Sherman Antitrust Act, 15 U.S.C. §§ 1-2 ......................................................................16, 22

**Other Authorities**

Federal Rule of Civil Procedure 56 ...............................................................................9, 26

## INTRODUCTION

Defendants file this limited motion for summary judgment based on the failure of Plaintiffs, Team Schierl Cos. ("Team Schierl") and Heartland Farms, Inc. ("Heartland Farms"), to establish antitrust injury. Antitrust injury is an essential element of Plaintiffs' antitrust claims, and it requires them to each identify specific transactions for which they overpaid because of an alleged violation of the antitrust laws. Despite lengthy discovery and extensive expert reports, Plaintiffs have failed to adduce evidence creating a genuine issue of material fact on antitrust injury for three, independent reasons.

*First*, Plaintiffs claim that Aspirus Network, Inc.'s ("ANI") joint contracting with limited exclusivity (what Plaintiffs define as the "Challenged Conduct") caused harm in the form of elevated reimbursement rates that in turn caused Plaintiffs to pay more for medical services than they otherwise would have. As Plaintiffs have suggested, the Court's order excluding the expert opinions of Dr. Jeffrey Leitzinger means Plaintiffs have no evidence of any overcharge linked to their reimbursement for medical services from Defendants, and thus they cannot show harm for purposes of establishing antitrust injury. Dkt. 240, at 1. Defendants agree. Defendants also agree that this failure of proof is a reason to "end the case" as to all remaining claims. *Id*.

*Second*, there is no evidence showing that but for the Challenged Conduct either of the Network Vendors used by Team Schierl and Heartland Farms—The Alliance and UnitedHealthcare ("UHC")—would have negotiated lower reimbursement rates with ANI that Plaintiffs in turn would have utilized to pay lower reimbursement rates for the ANI services they used.[1] The Seventh Circuit imposes a "but for" causation requirement to establish antitrust injury. That requirement asks whether, "'but for' the violation, the injury would not have occurred."

---

[1] "Network Vendors" refers to entities that assemble networks of providers.

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395, 399 (7th Cir. 1993) (citation omitted). Here, Plaintiffs challenge two provisions in ANI's Participating Provider Agreements ("PPAs") that authorize ANI to contract jointly with payors on a limited exclusivity basis. There is no evidence showing that "but for" these contractual provisions either The Alliance or UHC would have negotiated lower reimbursement rates with ANI for services that Plaintiffs would have used. Nor is there evidence that, in the absence of the Challenged Conduct, each ANI provider Plaintiffs used would have contracted with The Alliance and UHC (or vice versa), or that the result of those many separate negotiations would have been lower reimbursement rates for Plaintiffs. The absence of such evidence is significant because, as the Court recognized, the effect of the Challenged Conduct is not "necessarily one-directional; [it] could either increase or decrease" negotiated reimbursement rates. Dkt. 230, at 13. Plaintiffs cannot thus create a genuine issue of material fact on causation based on their speculation that The Alliance and UHC might have negotiated lower reimbursement rates with ANI and its providers absent the Challenged Conduct.

Nor can Plaintiffs fill this evidentiary void with the testimony of their other expert, Professor David Dranove. As discussed in Defendants' contemporaneously filed *Daubert* motion, Dranove does not offer a causation opinion specific to Team Schierl or Heartland Farms, and the general opinions he does offer are inadmissible *ipse dixit*. Even if his causation opinions were admissible, they do not overcome summary judgment because they are disconnected from the facts of this case and thus cannot create a genuine dispute of material fact.

*Third*, Plaintiffs are incapable of establishing antitrust injury because they are not proper federal antitrust plaintiffs. The undisputed record shows that Team Schierl and Heartland Farms never directly contracted with, or directly paid for healthcare services from, Defendants. Instead,

both Plaintiffs used Third-Party Administrators ("TPAs") to adjudicate and pay claims directly to Defendants using rates negotiated by their Network Vendors. Because the undisputed evidence shows that Plaintiffs' TPAs "████████" to ANI—not Team Schierl or Heartland Farms— Plaintiffs are indirect purchasers barred from seeking monetary damages under the federal antitrust laws pursuant to *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730-32 (1977). Because the Court dismissed with prejudice Plaintiffs' request for injunctive relief at Plaintiffs' request, the bright-line bar set by *Illinois Brick* also "ends the case." Dkt. 241, at 2.

Each of the foregoing reasons is independently dispositive of Plaintiffs' antitrust claims. Summary judgment should thus be entered in favor of Defendants and against Plaintiffs on all remaining claims.[2]

## STATEMENT OF FACTS

### I.   Aspirus, Inc. and Aspirus Network, Inc.

Aspirus, Inc. ("Aspirus") is a nonprofit, community-directed health system based in Wausau, Wisconsin, serving parts of Minnesota, Wisconsin, and Michigan. Defs.' Statement of Proposed Findings of Fact ("DPFF") ¶ 1. During the relevant time period from October 11, 2018 through June 30, 2023, Aspirus operated multiple hospitals and more than fifty outpatient clinics.[3] *Id*. ¶ 2. ████████████████████████████ ████████████████████████████ ████████████████████████. *Id*. ¶ 3. ████████ ████████████████████████████

---

[2] This summary judgment motion is limited to the topic of antitrust injury, as directed by the Court. Dkt. 240. Defendants reserve their right to seek summary judgment for additional reasons beyond Plaintiffs' inability to prove antitrust injury.

[3] The relevant time period of October 11, 2018 through June 30, 2023 is taken from Plaintiffs' motion for class certification and is the same time period used by Plaintiffs' experts.



████████. Dkt. 213, ¶ 168. ██████████████████████████

██████████████████████████████. DPFF ¶ 4. ████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████" *Id.* ██████████████████████████████. *Id.*

██████████████████████████████. *Id.* ¶ 7. ████████

██████████████████████████████████████████

██████████████. *Id.* ¶ 6. ████████████████████████

██████████████████████████████████████████. *Id.*

ANI is a "████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████" *Id.* ¶ 8. Its

██████████████████████████████████████████

██████████████ *Id.* ¶ 9. ANI's members include █████████████

██████████████████████████████████████████.

*Id.* ¶¶ 7, 10.

██████████████████████████████. *Id.* ¶ 11. ██████████

██████████████████████████████████████████." Ex. G, TEAM-

SCHIERL-ASPIRUS-0457342 at -346.[4] ████████████████

██████████████████████████████████████████

---

[4] All exhibits ("Ex.") refer to those attached to the accompanying Declaration of Zachary M. Johns supporting this motion.

4



. *Id.* § 3.3, at -346-47.

. *Id.* at -342; *see also id.*, § 3.1, at -345-46. . *Id.* § 3.14, at 350.

. *Id.*

. *Id.*

. *Id.*

. DPFF ¶ 12.

." Ex. G, TEAM-

SCHIERL-ASPIRUS-0457342, § 3.14, at -350.

## II.    Plaintiffs' Use of Network Vendors The Alliance and UHC to Access In-Network Healthcare Providers.

Plaintiffs are two Wisconsin-based employers that operate self-funded health benefit plans for their employees. Dkt. 186, at 1 (Pls.' Mem. of Law iso Mot. for Class Cert. ("Pls.' Class Br.")). Plaintiffs claim they overpaid for "in-network outpatient professional services" at rates negotiated by their Network Vendors. *Id.* at 1-3 & n.2; Dkt. 230, at 2-3.

Neither Team Schierl nor Heartland Farms ever negotiated a contract with ANI for in-network healthcare coverage for their health plans. DPFF ¶ 17. Instead, both Plaintiffs used the network agreements negotiated by Network Vendors. *Id.* ¶¶ 18-19. As this Court found, "ANI negotiates with a number of network vendors, but a majority of its contracts are negotiated with just five of them: The Alliance, Anthem Blue Cross Blue Shield, Security Health Plan, UnitedHealthcare, and the Aspirus HealthPlan." Dkt. 230, at 3. ██████████████████

███████████████████████. DPFF ¶¶ 17-18. █████████████████████████.

*Id.* ¶ 18. In addition, ████████████████████████████████████████████

█████████████████████████████████. *Id.* ¶ 19. █████████████████

███████████████████████████████████████.[5]

## A.    The Alliance.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████ . . . ." DPFF ¶ 20. As The Alliance put it, ██████████

████████████████████████████████████████." Dkt. 245, at 12:9-15 (Jan. 28, 2025

Rule 30(b)(6) Deposition of The Alliance ("The Alliance Dep.")). ████████████████

███████████████████████████████████████████. DPFF ¶ 22.

███████████████████████████████████████████████████

██████████████████. *Id.* ¶ 23. ████████████████████████████

██████████████████████████████████. *Id.* ████████████████

---

[5] ████████████████████████████████████████████████████████
███████████████████████████████████████. *Id.* ¶¶ 37-38.
████████████████████████████████████████████████. *Id.* ¶ 39. Accordingly, Plaintiffs do not claim harm stemming from their reimbursement of healthcare services while using RBP plans. *See* Dkt. 186, at 1-6 (Pls.' Class Br.).

███████████████████████████████████████████████████████

████████████████████. *Id.* ████████████████████████████

███████████████████████████████████████████████████████

███████. *Id.* █████████████████████████████████████████

████████████████████████████. *Id.* ██████████████████████

██████████████████████████████████████████████████. *See id.*

During the relevant time period, ████████████████████████████████████

███████████████. *Id.* ¶ 29. ███████████████████████████████

███████████████████████████████████████████████████████

████████████████████████. *Id.* ¶¶ 31, 33. ████████████████████

███████████████████████████████████████████████████████

████████████████████████████████. *Id.* ¶ 32. As discussed more fully below, ████

███████████████████████████████████████████████████████

██████████████████████████████████. *Id.* ¶ 18.

### B.    UHC.

██████████████████████████████████████████. *Id.* ¶ 34. ██████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████. *Id.* ¶ 36.

██████████████████████████████████████████

████████████████████████████████████████████. *Id*. ¶ 19. Team Schierl did not contract with UMR or any other Network Vendor besides The Alliance.

### III.    **Plaintiffs' Use of Third-Party Administrators to Adjudicate and Pay Claims.**

Plaintiffs did not directly administer their own plans or send money directly to healthcare providers who were under contract with Network Vendors. Instead, Plaintiffs ████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████. *Id*. ¶ 40; Dkt. 206, at 120:23-121:13, 142:23-25 (Feb. 26, 2025 Marc Bouwer Deposition); Dkt. 208, at 96:17-24 (Dec. 16, 2024 Candace Meronk Deposition).

Self-funded payors often (but not always) work with TPAs. ████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████. *Id*. ¶ 41. ████████████████████████████████████████████████████████████. *Id*. ████████████████████████████████████████████. *Id*. ██████████████████. *Id*. ███████████████████████████████. *Id*. ¶¶ 42-48.

███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████. *Id*. ¶¶ 42-44. ████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████. *Id*. ¶¶ 45-48. ██████████████████████████ ████████████████████████████████████████████. *Id*. ¶¶ 43, 46, 48.

### ARGUMENT

Under Federal Rule of Civil Procedure 56, the moving party is entitled to summary

8

judgment "if it shows that there are no genuine issues of material fact and is entitled to judgment as a matter of law." *McBride v. Rev Recreation Grp., Inc.*, No. 21-cv-614, 2022 WL 18232012, at *3 (W.D. Wis. Dec. 13, 2022) (Peterson, J.); Fed. R. Civ. P. 56(c). "[T]o demonstrate a *genuine* issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the *material* facts." *Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991, 995-96 (N.D. Ind. 2005) (emphasis added) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)). "Not all disputed facts . . . are relevant and material." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 359 (7th Cir. 2019) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)). "Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Miller*, 397 F. Supp. 2d at 996 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

As the Seventh Circuit has explained, "the very nature of antitrust litigation encourages summary disposition of such cases when permissible." *Collins v. Assoc. Pathologists, Ltd.*, 844 F.2d 473, 475 (7th Cir. 1988). Here, summary disposition is particularly warranted because of the multiple ways in which Plaintiffs have failed to create a genuine issue of material fact over the essential element of antitrust injury. As Plaintiffs admit, "[a] grant of summary judgment on [Plaintiffs' lack of antitrust injury] would allow the Court to quickly dispose of this case." Dkt. 240, at 2.

## I.    There Is No Genuine Dispute of Material Fact That Plaintiffs Have Failed to Substantiate an Antitrust Injury.

Under Plaintiffs' theory, the Challenged Conduct caused harm in the form of elevated reimbursement rates that in turn caused Plaintiffs to pay more for medical services than they claim they otherwise would have. As Plaintiffs have suggested, the Court's order excluding Dr.

9

Leitzinger's opinions means they lack evidence of a payment of an overcharge and thus harm for purposes of proving an antitrust injury. Dkt. 240, at 1-2. On this bases, Plaintiffs have effectively conceded that failure of proof alone should "end the case." *Id*. at 1.

In the January 30 Joint Status Report, Plaintiffs suggested they cannot prove antitrust injury "without Dr. Leitzinger's overcharge opinion." *Id*. To be clear, Plaintiffs cannot prove antitrust injury because, without Dr. Leitzinger's opinions (or any other support), they lack evidence as to the *fact* they were harmed. Antitrust injury—which is to say the fact of an injury "of the type the antitrust laws were intended to prevent" caused by the alleged conduct—is distinct from the amount of damages. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983); *see also Greater Rockford*, 998 F.2d at 401 (explaining that "[t]he proof required to show *causation* of damages is greater than that required to prove the *amount* of damages"). The inability to show that Plaintiffs have sustained an antitrust impact or any reimbursement attributed to Defendants dooms their ability to create a genuine issue of material fact as to antitrust injury.

Summary judgment is warranted for the additional reason that Plaintiffs have no statutory remedy for their claims. Plaintiffs offer no way to measure or substantiate monetary damages in light of the exclusion of Dr. Leitzinger's damages methodology. *See, e.g.*, Dkt. 230, at 1-2. To sustain a claim for monetary damages under the Clayton Act, "antitrust damages . . . 'must be capable of reasonable ascertainment and must not be speculative or conjectural.'" *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490-91 (8th Cir. 1992) (citation omitted); *see also MCI*, 708 F.2d at 1161 ("Once *causation* of damages has been established, the *amount* of damages may be determined by a just and reasonable estimate as long as the jury verdict is not the product of speculation or guess work." (emphasis in original)). In this case, identifying and calculating damages involves a complicated comparative analysis of the prices paid by Plaintiffs for certain

10

healthcare services in the actual world within a properly defined antitrust market and a reliable prediction of what prices would have been in that market for those same services but for the Challenged Conduct.

Plaintiffs turned to Dr. Leitzinger to calculate the percentage of overcharges and amount of aggregate, class-wide damages. Dkt. 186, at 6 (Pls.' Class Br.). But there is no dispute that, upon the exclusion of Dr. Leitzinger's damages opinion, Plaintiffs have no admissible evidence that can reasonably assist the trier of fact to identify and measure the alleged overcharges that Plaintiffs claim for the particular healthcare services that their members used and for which their TPAs paid. And Plaintiffs have no other remedy. The Court dismissed with prejudice Plaintiffs' request for injunctive relief at their request. Dkt. 241, at 2. Accordingly, summary judgment should be granted in Defendants' favor on this additional basis. *See Amerinet*, 972 F.2d at 1495 (affirming summary judgment where plaintiff failed to provide sufficient evidence supporting a "reasonable basis for the determination of its damages").

## II.    There Is No Genuine Dispute of Material Fact Concerning Plaintiffs' Inability to Show Causation, as Required for Antitrust Injury.

Antitrust injury imposes a "causation requirement in order to define the class of potential plaintiffs eligible to bring suit—those 'injured . . . by anything forbidden in the antitrust laws.'"[6] *Greater Rockford*, 998 F.2d at 395 (citation omitted). That is, district courts must determine as a matter of law "whether the violation was the cause-in-fact of the injury: that 'but for' the violation,

---

[6] "Sections 4 and 16 of the Clayton Act provide for private rights of action (for damages and injunctive relief, respectively) in antitrust cases." *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 842 (N.D. Ill. 2020) (citations omitted), *aff'd sub nom. Mayor of Baltimore v. AbbVie Inc.* ("*Humira II*"), 42 F.4th 709 (7th Cir. 2022). Both types of actions require that "plaintiffs suffer 'an antitrust injury,'" *id.*, "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Greater Rockford*, 998 F.2d at 394 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *Marion Healthcare, LLC v. S. Ill. Healthcare*, No. 12-cv-871, 2020 WL 1527772, at *8 (S.D. Ill. Mar. 31, 2020) (explaining that under Seventh Circuit law, antitrust injury is a "*necessary element* to prove an antitrust claim" (emphasis in original)).

11

the injury would not have occurred." *Id*. (citing *MCI*, 708 F.2d at 1161); *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 718 (7th Cir. 2006) (same); *Marion Healthcare*, 2020 WL 1527772, at *8 (same). This requires Plaintiffs to construct a "but-for world," *i.e.*, what would have occurred in the absence of the Challenged Conduct.

Here, Plaintiffs have failed to construct a but-for world. This means that Plaintiffs have no way to show that the Challenged Conduct was the "cause-in-fact" (or "but for") cause of their alleged injuries. This failing manifests itself in two ways. *First*, there is no evidence establishing that absent the Challenged Conduct, Plaintiffs' Network Vendors, The Alliance and UHC, would have negotiated lower reimbursement rates and Plaintiffs' TPAs thus would have paid ANI less for the specific services Plaintiffs' employees used. *Second*, Plaintiffs' merits expert, Dranove, attempts to fill this evidentiary void but only offers speculation about ████████████████ ████████████████████████████████████. Such speculation does not create a genuine dispute of material fact as to whether, but for the Challenged Conduct, Team Schierl's and Heartland Farms's alleged "injur[ies] *would* not have occurred." *Greater Rockford*, 998 F.2d at 401 (emphasis added).

Failing to construct a "but-for world" means that "[P]laintiffs have failed to show with a fair degree of certainty that 'but for' the alleged antitrust violation, the plaintiffs would not have suffered the injuries of which they complain. Consequently, as a matter of law the plaintiffs have failed to show antitrust injury, and summary judgment [is], therefore, appropriate." *Id.* at 404; *see id*. at 401-04 (affirming summary judgment where plaintiffs failed to show that the challenged conduct was the but for cause of plaintiffs' alleged injury).

### A.    There Is No Evidence That the Rates The Alliance and UHC Negotiated Would Have Been Lower But For the Challenged Conduct.

Seventh Circuit law is clear: to establish antitrust injury, plaintiffs must prove "with a fair

degree of certainty" that their "injury *would* not have occurred" but for the alleged restraint. *Id.* at

401 (emphasis added). The injuries Plaintiffs complain of here allegedly arise from purchases of

"in-network outpatient professional healthcare services." Dkt. 186, at 2-3 (Pls.' Class Br.); *see also*

Dkt. 198, ¶¶ 13-14, 27-29 (Opening Expert Report of David Dranove); Dkt. 191, ¶¶ 5, 45-59

(Opening Expert Report of Jeffrey Leitzinger). ███████████████████████████

████████████████████████████████████████. DPFF ¶ 18. ██████

████████████████████████████████████████████████████████

███████████████████████████. *Id.* ¶¶ 18-19. Plaintiffs cannot

establish antitrust injury because they have failed to adduce evidence creating a genuine dispute

of material fact that but for the Challenged Conduct their alleged injury would not have occurred,

*i.e.*, The Alliance or UHC would have negotiated lower rates as to the particular services Team

Schierl and Heartland Farms used and, as a result, Plaintiffs would have paid less for their

healthcare transactions.

    **1.**    **Plaintiffs Have Failed to Create a Genuine Dispute as to Whether The Alliance Would Have Negotiated Lower Rates in the But-For World.**



███████████████████████████████████████████

███████████████████████████████████████ *Id.* ¶ 20. ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████. *Id.* ¶ 23. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. *Id.* ¶

24. ████████████████████████████████████████████████

13

██████████████████████████████████████████████████████████. *Id.* ¶

25. ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶ 26.

Fatally, Plaintiffs have not adduced sufficient evidence to create a genuine dispute that but for the Challenged Conduct, (1) The Alliance would have negotiated lower reprice rates with ANI, or (2) ANI and its providers would have each decided to set lower billed charges. This means that Plaintiffs have failed to develop evidence showing "with a fair degree of certainty" that any of the charges submitted to Plaintiffs' health plans would have been less in a counterfactual, but-for world without the Challenged Conduct. *Greater Rockford*, 998 F.2d at 404.

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. DPFF ¶ 21. There is no evidence that this coalition of self-funded employers would have been able to negotiate different reprice rates if ANI somehow negotiated differently with it.

For example, there is no evidence that in the but-for world The Alliance would have chosen to negotiate with each ANI provider independently, and that this fragmented negotiation would have resulted in lower reprice rates for the services Plaintiffs used. On the contrary, The Alliance testified that it ████████████████████████████████████████████████

███████████████. Dkt. 245, at 64:5-65:13 (The Alliance Dep.) ("████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████"). Plaintiffs have not adduced any evidence showing that in the absence of the Challenged Conduct, The Alliance would have done things differently or its preferences would have changed—much less that any shift in The Alliance's contracting strategy would have caused

14

Plaintiffs to pay lower reprice rates.

Plaintiffs have adduced no evidence sufficient to create a genuine dispute of material fact as to whether each ANI provider would have (or even could have) individually negotiated with The Alliance absent the Challenged Conduct. For example, there is no evidence that each ANI provider of healthcare services to Plaintiffs would have chosen to contract with The Alliance, or that the result of individual ANI providers' negotiations with The Alliance would have been lower reprice rates for Plaintiffs. Moreover, multiple ANI providers testified that they ██████████████ ████████████████████████████████████████████████████. DPFF ¶ 16.

### 2.    With Respect to Heartland Farms, There is No Genuine Dispute as to Whether UHC Would Have Negotiated Lower Rates in the But-For World.

These failures of proof also doom Heartland Farms' damages claims predicated on their indirect reimbursement of in-network services through UMR. As discussed, ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. *Id*. ¶¶ 43-44. As is the case with The Alliance, Heartland Farms failed to adduce any evidence to prove that, but for the Challenged Conduct, UHC would have negotiated lower reimbursement rates with ANI that UMR and thus Heartland Farms could use in turn. There is an absence of proof as to, in the but-for world: (1) how ANI would have contracted with UHC differently and how that would have affected reimbursement rates for the particular services Heartland Farms used, if at all; (2) whether UHC would have elected to contract with each ANI provider separately and whether that would have lowered the rates Heartland Farms indirectly used for reimbursement; and (3) whether each provider would (or could) have chosen to negotiate with UHC, resulting in lower rates for Heartland Farms. Indeed, Plaintiffs did not even bother to depose UHC to explore whether UHC believes it would have negotiated lower rates for Heartland Farms if ANI's contracting policies

15

were different or if UHC had negotiated with each provider individually.

*    *    *

Due to these evidentiary chasms, the jury and Court cannot construct a but-for chain of causation without engaging in "pure speculation," which is fatal to a finding of antitrust injury. *See Marion Healthcare*, 2020 WL 1527772, at *12. *Marion Healthcare* is particularly instructive on this score. There, the court granted defendant's motion for summary judgment in a lawsuit involving allegations that the defendant's exclusive contracts with payors violated Sections 1 and 2 of the Sherman Act. *Id*. at *2. In an attempt to establish antitrust injury, the plaintiff argued that the defendant's "exclusive contracts caused [plaintiff] to lose patient volume because being out-of-network deterred patients from seeking care at an out-of-network facility like [plaintiff]." *Id*. However, the court found there were other reasons the plaintiff remained out-of-network with certain payors, and found the plaintiff "was able to contract with some [payors] . . . successfully to go in-network and declined to contract with others as a business strategy[.]" *Id.* The court held that summary judgment was warranted because there were "real evidence issues in the record that [made] it impossible for the Court" to find, without speculating, "that but for [the challenged]. . . contracts with payers, [plaintiffs'] injury would not have occurred." *Id.* at *10. The same is true here. It is "impossible for the Court" to find, without engaging in rank speculation, that but for the Challenged Conduct, Plaintiffs would have paid less for the specific healthcare services they used from ANI based on reimbursement rates negotiated by The Alliance and UHC.

In sum, Plaintiffs have not adduced evidence creating a genuine dispute of material fact that they can establish antitrust injury—namely, that but for the Challenged Conduct, their TPAs would have paid lower reimbursement rates to ANI for in-network services negotiated by The Alliance and UHC. Accordingly, summary judgment should be granted in Defendants' favor.

16

*Greater Rockford*, 998 F.2d at 404.

## B.     Plaintiffs' Expert's Causation Opinions Do Not Defeat Summary Judgment.

Dranove's opinions fail to raise genuine dispute as to whether Plaintiffs can satisfy the Seventh Circuit's but-for causation requirement for antitrust injury.[7] Although Dranove *agrees* that ███████████████████████████████████████████, he does not do so. Dkt. 246, at 261:7-15 (Dec. 3, 2025 Deposition of David Dranove, Ph.D. ("Dranove Dep.")). Instead, he merely speculates about ███████████████████████████████████████████ ████████████████████. Dranove's musings do not create a genuine dispute of material fact that, but for the Challenged Conduct, Team Schierl's and Heartland Farms' alleged "injur[ies] *would not have occurred*." *Greater Rockford*, 998 F.2d at 404 (emphasis added).

In this case, to establish the but-for world (and thus but-for causation), Dranove was required to assess, among other things, how ANI and its providers would have contracted with Plaintiffs' Network Vendors (specifically, The Alliance and UHC) absent the Challenged Conduct. Otherwise, Dranove could not measure any difference between reimbursement rates paid in the actual world (where the Challenged Conduct allegedly existed) and but-for world (where ANI purportedly would have contracted with Network Vendors differently).

Dranove's Opening Report does not discuss how ANI and its providers would have contracted with Network Vendors absent the Challenged Conduct. After that critical analytical gap was identified by Defendants' expert, Dranove tried to fill it in his Reply Report by offering ████ ███████████████████████████████████████████ Dkt. 199, ¶ 140 (Reply Expert Report of David Dranove). █████████████████████████████████████

---

[7] For additional discussion of Dranove's flawed opinions, Defendants refer the Court to, and incorporate by reference herein, their Limited Motion to Exclude Antitrust Injury Related Opinions and Testimony of Professor David Dranove.



." *Id.* None of

these possibilities are specific to how ANI and its providers would have contracted with The

Alliance or UHC.

At his deposition,

. Dkt. 246,

at 264:5-20 (Dranove Dep.).

. *Id.* at 263:6-18, 264:21-265:18. Ultimately,

Dranove testified

. *Id.* at 272:15-21.

Dranove's opinion about what could have happened in the but-for world cannot overcome

summary judgment for multiple reasons. First, there are no "specific facts" in the record that

support it. *See, e.g.*, *Shurr v. A.R. Siegler, Inc.*, 70 F. Supp. 2d 900, 936 (E.D. Wis. 1999) (citing

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)

(unsupported expert opinions do not overcome summary judgment)).[8] Second, Dranove's

---

[8] *See also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts . . . , or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

████████████████████████ does not create a genuine dispute of material fact as to whether, but for the Challenged Conduct, Plaintiffs' alleged "injury *would* not have occurred." *Greater Rockford*, 998 F.2d at 395, 401 (emphasis added).

The distinction between what "could" or "would" have happened is significant. Courts have held that similar speculation about what *could* have happened in the but-for world is insufficient to establish that a defendant's conduct was the cause-in-fact of alleged anticompetitive harm. In *Humira*, plaintiffs alleged that defendant AbbVie, Inc. engaged in anticompetitive conduct that artificially inflated the prices that plaintiffs paid for AbbVie's biologic, Humira. *Humira*, 465 F. Supp. 3d at 819. Plaintiffs alleged two theories for why AbbVie's conduct was the cause-in-fact of their injury: (1) but for AbbVie's agreements to settle patent litigation, the manufacturers challenging defendant's patents for Humira "could have" prevailed in those suits and thus could have launched a competing biologic or biosimilar products sooner, driving down prices; and (2) but for AbbVie's decision to assert patents that were allegedly invalid in the underlying patent litigations, the biosimilars' bargaining positions could have been stronger and could have been able to negotiate earlier entry dates. *Id*. at 843.

The court held that both theories were "too speculative and would require legal and factual determinations that go beyond judicially manageable limits." *Id*. (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 543 (1983) and *Greater Rockford*, 998 F.2d at 394). That was because both theories, the court found, were predicated on what merely *could* have happened in the counterfactual world, not what *would* have happened. *Id*. at 843-46. For instance, the court held as to their first theory, "plaintiffs' use of the word 'could' instead of 'would' is not merely semantic; it signals that they do not intend to prove that prices were going to fall but for the litigation. They have conceived of a world where that might have

19

happened, but conceivable falls short of plausible." *Id*. at 844 (citing *Carlson v. CSX Transp., Inc.*, 758 F. 3d 819, 826 (7th Cir. 2014)); *see also United Food & Com. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1155 (N.D. Cal. 2017) (requiring "some evidence" of the patents' invalidity "is not the same as requiring plaintiffs to prove that the generic defendant *would have* won, only that it *could have*" won in the underlying infringement suit) (emphasis in original)). The district court was affirmed by the Seventh Circuit. *Humira II*, 42 F.4th 709.

Other courts have likewise required a showing of what *would* have happened in the but-for world to show antitrust injury. For example, in *Wellbutrin*, to establish antitrust injury, plaintiffs were required to "show that the harm they say they experienced—increased drug prices for Wellbutrin XL (and its generic equivalents)—was caused by the [Hatch-Waxman patent] settlement they [were] complaining about." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 164-65 (3d Cir. 2017). The Third Circuit held that plaintiffs failed to meet that burden because there was no evidence that a generic drug manufacturer "*would* have" been able to legally launch a competing drug product sooner in the but-for world and thereby allegedly lower the prices for Wellbutrin. *Id*. (emphasis added). The court explained that "[i]n order to withstand summary judgment," plaintiffs were required to, *inter alia*, "produce evidence from which a reasonable jury could conclude that it [was] more likely than not that Anchen *would* have obtained a license. Evidence showing that Anchen *may* have been able to obtain a license [did] not meet that standard." *Id*. (emphasis in original). That was because "[a] plaintiff cannot satisfy the summary judgment burden based on speculation alone." *Id*. at 167; *see id*. at 169-70 ("affirm[ing] the District Court's grant of summary judgment" because, among other reasons, plaintiffs failed to meet the "would have" causation standard); *In re Lipitor Antitrust Litig.*, No. 12-cv-2389, 2024

20

WL 2866654, at *24 (D.N.J. June 6, 2024) (applying *Wellbutrin* and granting summary judgment in favor of defendants on similar facts).

As was the case in *Humira*, ████████████████████████████████████ ██████████. It reveals that Plaintiffs "do not intend to"—and, in this case, cannot—"prove that prices [would have been less] but-for the [Challenged Conduct]." *Humira*, 465 F. Supp. 3d at 844.



.

This Court acknowledged the "would have" standard at the motion to dismiss stage. When analyzing the causal connection required for Plaintiffs to establish an exclusive dealing theory, the Court held that "[a]t summary judgment or trial, plaintiffs will have to come forward with specific evidence that new networks likely *would* be formed in the absence of the restraints in ANI's contracts." Dkt. 47, at 20 (emphasis added). Yet, Plaintiffs have failed to come forward with such "specific evidence" of any alternative narrow networks or more generally make a showing of what "would" have happened if ANI did not jointly contract on a limited exclusivity basis. Dkt. 246, at 330:7-13 (Dranove Dep.) ("████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████.").

Without any record or expert evidence sufficient to create a genuine issue of material fact on causation, summary judgment should be entered in favor of Defendants as to the essential element of antitrust injury. *Greater Rockford*, 998 F.2d at 395, 401.

## III.    Plaintiffs Are Indirect Purchasers and Thus Cannot Establish Antitrust Injury.

Plaintiffs are also not proper federal antitrust Plaintiffs under *Illinois Brick* and thus

necessarily cannot establish cognizable antitrust injury for this reason as well.[9]

It is long-settled that an indirect purchaser plaintiff cannot seek damages under the federal antitrust laws. *Illinois Brick*, 431 U.S. at 730-32. A plaintiff has not been "injured" for purposes of the Sherman Act if those alleged to have violated the antitrust laws did not transact *directly* with the plaintiff but instead with someone else. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 206-07 (1990) (citing *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 493-94 (1968)); *Illinois Brick*, 431 U.S. at 730-31; *see also Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1477 (7th Cir. 1991) ("[O]nly direct purchasers may sue sellers who violate the antitrust laws; the purchaser's customers (the 'indirect' purchasers) may not."). The Supreme Court reiterated this is a "bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers[,]" which means that "indirect purchasers who are two or more steps removed from the violator in a distribution chain may not sue." *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019) (citing *Illinois Brick*, 431 U.S. at 746); *UtiliCorp*, 497 U.S. at 207 (defining an indirect purchaser as an entity that is "not the immediate buyers from the alleged antitrust violators"); *see also California v. ARC Am. Corp.*, 490 U.S. 93, 97 (1989) (same).

The *Illinois Brick* indirect purchaser rule "serves, in part, to eliminate the complications of apportioning overcharges between direct and indirect purchasers." *UtiliCorp*, 497 U.S. at 208. The Supreme Court has expressed an unwillingness to recognize exceptions to this bright-line rule, explaining that "the process of classifying various market situations according to the amount of pass-on likely to be involved and its susceptibility of proof in a judicial forum would entail the very problems that the [indirect purchaser] rule was meant to avoid," including the need for

---

[9] Only Plaintiffs' damages claim remains, which is barred by *Illinois Brick*. The Court has accepted plaintiffs' voluntary dismissal of their request for injunctive relief "with prejudice." Dkts. 240, 241.

"massive evidence and complicated theories" in treble damages cases. *Illinois Brick*, 431 U.S. at 744-45. The Supreme Court is "emphatic" about the strictness of this requirement. *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1414 (7th Cir. 1995) (citations omitted).

Here, Plaintiffs' claims fall on the wrong side of the Supreme Court's bright-line rule. The undisputed evidence shows that ████████████████████████████████ ████████████████████. DPFF ¶¶ 43, 46, 48. As such, Plaintiffs are indirect purchasers and cannot sue for monetary damages. *In re NorthShore Univ. HealthSystem Antitrust Litig.*, No. 07-cv-4446, 2018 WL 2383098, at *6 (N.D. Ill. Mar. 31, 2018); *cf. Marshfield Clinic*, 65 F.3d at 1414 (finding that insurance company Blue Cross had antitrust standing where "money went directly from Blue Cross to the Clinic").

Contrary to what Plaintiffs have argued, the outcome does not turn on "whose funds were used" to pay claims. Dkt. 186, at 3 (Pls.' Class Br.) (attempting to define the class to include purchasers "whose funds were used to pay Defendants"); Dkt. 219, at 5-13 (Pls.' Reply in Supp. Mot. for Class Cert. ("Pls.' Class Reply")) (arguing the *Illinois Brick* question turns on "whose funds were used" to pay medical claims). In *Pepper*, the Supreme Court rejected a similar attempt to avoid the bright-line indirect purchaser rule by focusing on "who sets the price" for the products at issue. *Pepper*, 587 U.S. at 281-85. Apple argued that, even though "iPhone owners purchase apps directly from the retailer Apple," iPhone owners were not entitled to bring an antitrust claim under *Illinois Brick* because "app developers, not Apple, set the retail price charged to consumers." *Id.* at 281. In rejecting that argument, the Court found no reason to parse the economics of the transactions or depart from the Court's "straightforward rule" grounded in the "text of the antitrust laws and from [its] precedents" that plaintiffs who make a purchase directly from the defendant

have standing to assert a claim for damages under the federal antitrust laws. *Id*. at 281-85. Plaintiffs in Pepper thus could pursue a claim against Apple, even though Apple did not develop the apps that were purchased. Under *Pepper*, the distinction Plaintiffs seek to draw about "whose funds were used" is meaningless—the dispositive question is who directly transacted with Defendants for healthcare services, and, ████████████████████████████████████████ ███████. DPFF ¶¶ 43, 46, 48.

*NorthShore* is also on-point. There, plaintiffs brought a putative class action on behalf of alleged direct purchasers of NorthShore's inpatient and outpatient services, "alleging that NorthShore illegally monopolized the healthcare services market and used its resulting leverage to artificially inflate prices paid by Plaintiffs and the putative class." *NorthShore*, 2018 WL 2383098, at *1. In moving to decertify the class, NorthShore argued that a certain self-funded plan could not be a member of the class (or a class representative) as it was an indirect purchaser, because Blue Cross Blue Shield, in its capacity as an "Administrative Services Only (ASO) insurer," paid claims for healthcare services on the self-funded plan's behalf. *Id*. at *5-6.

The court explained that the "key element" in determining which entity is entitled to bring an antitrust claim depends on who made the "direct payment"—*i.e.*, the self-funded plan or Blue Cross Blue Shield administering the plan. *Id*. at *6. The self-funded plan in *NorthShore* argued that it was the direct purchaser because, even though the administrative services entity directly paid its claims, (1) the self-funded plan assumed all of the risk—*i.e.*, its funds were being used to pay the claims—and (2) Blue Cross Blue Shield's ASO plan was merely acting as a "conduit for payment." *Id*. at *6-8. These are the same arguments that Plaintiffs have raised in this case. Dkt. 219, at 5-13 (Pls.' Class Reply).

The *NorthShore* court rejected both arguments because there were "no facts to support that

24

[plaintiff]," *i.e.*, not Blue Cross Blue Shield, "*directly* paid NorthShore." *NorthShore*, 2018 WL 2383098 at *6-8 (emphasis in original). It did not matter which entity assumed the risk for the claims or what degree of involvement Blue Cross Blue Shield had in administering the plan—the dispositive question was who directly paid NorthShore. This was not a situation where a plaintiff "hired a third party administrator to process claims" and "plaintiffs . . . paid the bills *directly* from their revenues." *Id*. at *7 (emphasis in original; citation omitted).

Thus, under *NorthShore*, summary judgment is warranted as to all of Plaintiffs' claims because "the fact remains that [Plaintiffs' TPA]—not Plaintiffs—[were always] the entit[ies] actually sending money to [Defendants] for payment." *Id*. The result is the same regardless of whether Plaintiffs assumed the ultimate risk for the payment of claims or if their TPAs supposedly acted as a mere conduit of payment.[10] *Compare* Dkt. 219, at 5-13 (Pls.' Class Reply), *with NorthShore*, 2018 WL 2383098, at *7.

"For the sake of completeness," the *NorthShore* court also examined the contracts between Blue Cross Blue Shield and NorthShore and between plaintiff and Blue Cross Blue Shield, and determined those agreements contained additional evidence that the indirect purchaser rule barred plaintiff's claim. *Id*. at *7-8. For example, the court found: (1) plaintiff was not listed in Blue Cross Blue Shield's agreement with NorthShore; (2) plaintiff's agreement with Blue Cross Blue Shield determined what amounts the plan was willing to make available for *Blue Cross Blue Shield* to then directly pay NorthShore; (3) the agreement also contained an indemnity provision and a

---

[10] Plaintiffs' attempt to minimize the role of their TPA is inconsistent with the undisputed record. Far from merely acting as a "mailman" for their checks, Dkt. 219, at 7-8 (Pls.' Class Reply), Plaintiffs' TPAs performed several administrative services, including, for example, ██████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████████████. Ex. X, AITHER00001 at 021-25; Ex. L, UHG-Team_Schierl-00027170 at 182-88; Ex. Y, HF_009993 at 997-99; *see also* Dkt. 245, at 15:2-21 (The Alliance testifying that ████████████████████████ █████████████████████████████████████").

25

termination clause that shielded Blue Cross Blue Shield from liability as the direct purchaser of NorthShore's services. *Id*. at *7. ███████████████████████████████████

███████████████████████████████████████████████, DPFF ¶¶ 29, 34;

███████████████████████████████████████████████

███████████████████████████████████████████, *id*. ¶¶ 43, 46, 48;

███████████████████████████████████████s. *Id*.

The *NorthShore* court found that the "only other relevant consideration in the *Illinois Brick* analysis [was] which entity negotiated and maintained the contract with the healthcare provider. That is [Blue Cross Blue Shield]. [Plaintiff's] employees conceded that the [Plaintiff] does not have a contract with the hospitals and that it is [Blue Cross Blue Shield] that negotiates the contracts." *NorthShore*, 2018 WL 2383098, at *8. Here, it is undisputed that ██████████

███████████████████████████████████████████████

████████████. DPFF ¶ 17. There is thus no genuine dispute of material fact that Plaintiffs are indirect purchasers and therefore lack the ability to even pursue their federal antitrust claims.

## CONCLUSION

For these reasons, the Court should enter judgment in Defendants' favor on all claims pursuant to Federal Rule of Civil Procedure 56.

Dated: February 25, 2026

Daniel Conley
Nathan Oesch
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Milwaukee, WI 53202
T: 414-277-5000
F: 414-271-3552
daniel.conley@quarles.com
nathan.oesch@quarles.com


Matthew Splitek
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
T: 608-251-5000
F: 608-251-9166
matthew.splitek@quarles.com

Respectfully submitted,

/s/ Zachary M. Johns
Steven A. Reed (*pro hac vice*)
R. Brendan Fee (*pro hac vice*)
Zachary M. Johns (*pro hac vice*)
Vincent C. Papa (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-3007
T: 215-963-5000
F: 215-963-5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com
zachary.johns@morganlewis.com
vincent.papa@morganlewis.com

Kenneth M. Kliebard (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606-1511
T: 312-324-1000
F: 312-324-1001
kenneth.kliebard@morganlewis.com

Ryan Kantor (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
T: 202-739-3000
F: 202-739-3001
ryan.kantor@morganlewis.com

*Attorneys for Defendants,*
*Aspirus, Inc. and Aspirus Network, Inc.*

27